STATE vs. WELCH and another.

REPLEVIN. (1) *Warrant in, need not state value of property.*
CRIMINAL LAW. (2, 3) *Resistance to officer defined.* (4) *Mere threats not resistance. Acts must be directed towards officer.*
INFORMATION. (5) *Offense may be charged in words of statute.*

1. In replevin under our statute (R. S., ch. 120, secs. 134-5), the complaint must state the *value* of the property, and give a *description* thereof; but the warrant, while it must copy the description given in the complaint (for the purpose of identifying the property), need not state the value.

2. Sec. 18, ch. 167, R. S., provides for punishing by fine or imprisonment, or both, "every person who shall knowingly resist" any sheriff or

other ministerial officer, " while engaged in the lawful execution of any civil or criminal process," etc. *Held,*

(1) That this, like other criminal statutes, is to be *strictly construed.*

(2) That the word "resist" properly describes an opposition by direct, active and *quasi* forcible means; and the acts forbidden by the terms of the statute must be directed *towards the officer himself.*

(3) That the omission from our statute of descriptive words employed in most other statutes relating to the same general subject — such as hinder, obstruct, prevent, interrupt, intimidate, and the like — shows an intention on the part of the legislature to exclude such merely passive, indirect or circuitous impediments to the execution of process, as might be included within the meaning of those words.

3. In this case the officer was about to seize, under a valid writ of replevin, a pair of colts running at large in a field; but defendants, by throwing up their hands, and by throwing sticks at the colts, frightened them away so that the officer could not catch them; and afterwards, the officer having left the premises to obtain assistance, defendants took the colts from the premises so that he could not find them. *Held,* that these facts did not constitute the criminal offense described in the statute.

4. It seems that *mere threats* to the officer, unaccompanied by force, would not constitute the statutory offense; but that actual force, or a common assault upon the officer, is not necessary, and that threats against him, with the present ability and apparent intention to execute them, may constitute the resistance described in the statute.

5. Under sec. 20, ch. 137, Laws of 1871, statutory offenses may be charged in informations, in the words of the statute; and, where this is done, the insertion of unnecessary averments will not vitiate the information.

REPORTED from the Circuit Court for *Trempealeau* County.

An information was filed charging that on, etc., at, etc., the defendants "did willfully and maliciously and knowingly resist James Hopkins, a constable in said town, then and there being duly elected and qualified, while he, the said James Hopkins, was engaged in the lawful execution of a civil process, to wit: a warrant for the recovery of the possession of personal property, issued out of a justice court of said county * * on * * by * * a justice of the peace of said county * * , the said court having jurisdiction of the subject matter, and the said justice of the peace being then and there fully authorized by law to issue such process, the said (defendants) did then and there

hinder, resist and prevent such constable from executing said process against, etc.   A second count charged, that (defendants) "did * * * willfully and knowingly impede, hinder and resist a civil officer under the authority of this state, to wit: J. H. a constable * * * in then and there serving, and attempting to serve, a legal warrant of replevin, which was of purport and effect following, to wit: "Trempealean county, town of Preston, ss. The State of Wisconsin; To the Sheriff, etc.; Whereas, Wm. Tainter complains that W. H. Welch has taken and does unjustly detain one grey gelding colt with white spots in face, two years old next fall, also, one bright bay gelding colt, with one white hind foot; therefore, you are commanded," etc., (closing in statutory form); that such resistance was then and there made, by said (defendants) then and there knowingly, willfully and forcibly driving said colts, in the writ above described, from the possession and from the control of said officer, J. H., and by threats of personal violence; that said writ of replevin above set forth was duly issued by J. L. DeBow, a justice of the peace, who was duly authorized to issue the same; that the aforesaid resistance was then and there made by said (defendants) while the said J. H. was then and there engaged in the lawful execution of the civil process herein set forth; and that by such resistance the said J. H. was then and there prevented from serving and executing said civil process, as he might and otherwise would have done, against," etc.

Before any evidence was offered, defendants' counsel objected to any evidence being received, on the ground that the information did not charge an offense; as the warrant of replevin set forth did not state the value of the property sought to be recovered. Objection overruled. The testimony was, in substance, to the effect that the constable read the warrant to defendant *Wm. Welch*, and offered him a copy, and *Welch* told him he should not get out of there alive with the colts; that they were his, and he would defend them. The plaintiff, Tainter, was present, and *Welch* picked up a stick and went towards him, threatening to

split his brains out. The constable and the plaintiff then tried to catch the colts, which were in a pasture, but the defendants threw sticks at the colts, and threw up their hands and scared the colts so that they ran away; and while the officer was gone for help, the defendants drove the colts beyond his reach, and thus prevented him from taking them.

The questions arising in the case, on which the opinion of this court is required, are: 1. "Whether the information charged an offense; the warrant of replevin set out therein showing that the value of the property was not stated as part of the description?" 2. "Whether the facts proved constituted an offense under the statute; that is, whether the evidence shows a resistance of the process within the meaning of the law?"

*Geo. B. Smith*, for defendants.

RYAN, C. J. The sufficiency of the information was virtually conceded by the learned counsel who appeared for the defendants in this court. Indeed, whether or not it might be considered good at common law, there is no room for doubt that it is sufficient under ch. 137 of 1871. Sec. 20 provides that statutory offenses may be charged in informations in the words of the statute. Both counts of the information before us follow the language of the statute defining the offense charged, with some harmless surplusage.

The particular objection taken to the information below rests on the sufficiency of the justice's warrant of replevin set forth in the second count. The objection is, that the warrant does not state the value of the property to be replevied, as a necessary part of the description of it.

The value of goods to be replevied goes to the jurisdiction of the justice and to the recovery of the party. So the statute requires the affidavit on which the justice's jurisdiction is founded, and which stands as the pleading of the party, to give, not only a description of the goods, but also their value. But value is no part of the description, and does not aid the execu-

tion of the warrant, as description does. The statute, therefore, requires the warrant to copy the description from the affidavit, but not the value. R. S., ch. 120, secs. 134, 135. Description goes to identification of things ; value to property in them. So while both are essential to the complaint, value is immaterial in the warrant. This is the plain letter of the statute, founded on a plain distinction. The warrant follows the form of the statute, and is good.

We therefore answer to the first question reported by the judge of the circuit court for the decision of this court, that the information charges the offense in due form of law.

The statute under which the offense is charged, makes it a misdemeanor to resist an officer engaged in the lawful execution of lawful process. Statutes of similar character elsewhere, we think generally, use several words descriptive of the offense. A federal statute of 1790, from which the descriptive words are copied in Pennsylvania, Illinois and other states, employs the words, *obstruct, resist,* or *oppose;* and the federal statute, *obstruct, hinder* or *prevent;* a Massachusetts statute, *intimidate, hinder,* or *interrupt.* In the New York statute, as in our own, the word, *resist,* stands alone. Our statute was passed in 1854, and probably followed the New York statute, adopted in 1845. We find no construction of the latter reported. And the question we are now to pass upon appears to be one of first impression.

The statute must of course receive a strict construction. In commenting on the last federal statute mentioned, the late learned and able judge KANE, after a critical and discriminating analysis of the statutory words, *obstruct, hinder,* and *prevent,* says : " These distinctions are, however, the appropriate subject of scholastic, rather than juridical disquisitions ;" and holds that the words bear the same meaning in the statute. *U. S. v. Williams,* Wharton's Am. Crim. Law, sec. 1295, note n. We do not so understand the rule of construction. We take it to be correctly stated by Mr. Dwarris (706) : " When the legisla-

ture, in the same sentence, uses different words, the courts of law will presume that they were used to express different ideas." And *vice versa*, when one legislature saw fit to drop descriptive words used in other statutes, such as oppose, obstruct, hinder, prevent, interrupt, intimidate, etc., we feel bound to understand that it did so intelligently, and omitted such words because it did not intend what such words signify.

It is obvious that many or all of these words would include passive, indirect and circuitous impediments to the service of process. Some may imply merely negative difficulties, as hindering or preventing an officer by not opening the door or removing an obstacle or identifying a person or thing; or indirect difficulties, as preventing or obstructing an officer by warning or concealing a person or removing or hiding a thing; or difficulties in parol, as intimidating an officer by threats, or interrupting him by outcries, or preventing him by false identification or information. All these passive, indirect, circuitous, collateral difficulties in the way of an officer's execution of his process, we take to be excluded from our statute by the use of the single word, *resist*. To resist, is to oppose by direct, active and *quasi* forcible means. Crabb tells us that resistance is always direct, and, applied to persons, always implies more or less force. Bouvier defines it to be the opposition of force to force. The word is Latin, and its use seems to be singularly true to its etymology and to retain the exact classical meaning. It is the policy of this statute to protect an officer in the execution of process, NE VIS HUMANA RESISTAT. *Lucr.* We apprehend that to be still the precise meaning of the word employed in the statute, to stand against or to withstand. This we take to be the popular, the scholarly and the legal sense of it. In *United States v. Lukens*, 3 Washington, 335, is found a loose *dictum*, purely *obiter*, that refusal to obey an officer is resistance of the officer; which we cannot regard as of any authority in reason or law. And to bring a case within the statute, it is not enough that the execution of the process

is opposed or obstructed or interrupted or hindered or pre-vented; the officer must be resisted. It is not enough that he is embarrassed or impeded or defeated in the execution of his process; this must be by resistance to him, to bring it within the statute. And the resistance must be active and direct towards him. He may be balked, baffled, circumvented, frus-trated, and yet not be resisted. All those things are contempt of the process of the law, which are highly censurable and may be actionable; but, short of resistance, they do not come with-in the purview of this statute. No mere interference with the person to be arrested or the thing to be seized, before arrest or seizure made, not involving an actual resistance of the officer, is within the statute. The gist of the offense is personal re-sistance of the officer.

We do not hold that there must be actual force or even a common assault upon the officer. It is not easy to see how, but resistance may be possible, within our construction of the statute, without actual violence or technical assault.

Of course we agree with the learned judge before whom the case was tried, that mere threats to the officer, unaccompanied by force, would not warrant the conviction of the defendants. Mere words cannot constitute resistance. Undoubtedly threats, with present ability and apparent intention to execute them, might well be resistance, as they might well amount to an assault; but not such vague, intemperate language as these defendants seem to have used without apparent purpose.

There was probably a common assault upon the plaintiff in replevin, which had no relation to the officer and cannot aid the finding of the jury. Had the defendants so conducted themselves towards the officer, we should have no difficulty in upholding the verdict.

There is no pretense in this case that the officer had actually or constructively seized the horses to be replevied. As far as they were concerned, his warrant was wholly unexecuted. The jury must have found that he would have executed his writ

by seizing them, had not the defendants driven the horses beyond his reach. If the defendants had withstood the officer in his advance upon the horses, they would have been guilty of the offense charged upon them. But they did nothing of the kind. They effected their purpose of keeping the officer and the horses apart, not by preventing the officer from approaching the horses, but by causing the horses to run from him. They baffled the execution of the process, but they did not resist the officer. They withstood nothing which he did, though they left him nothing to do. Towards the officer himself they were wholly passive. If the process had been for their arrest, and they ran away from the officer before arrest: or it had been for the arrest of another, and he ran away before arrest, by their counsel: we could not hold them guilty of resisting the officer. Had the replevin been for a bird, which they let fly from its cage and from the officer, before seizure: or for a dog, who followed their call out of reach of the officer, before seizure: or for a boat in which they sailed away, or a carriage in which they drove away from the officer, before seizure: we could not hold that they resisted the officer. In all these cases, the execution of the process might be hindered or prevented, but the officer would not be resisted. Had the defendants, in these circumstances, mounted these horses and ridden away as fast and as far as Gilpin, we could not say that they were guilty of resisting the officer under this statute.

Whether it was wise or unwise for the statute to stop with the single word, resist, it is not for us to say. It is possible that the legislature did not care to put it in the power of every ministerial officer to trouble unfortunates with whom he might have to do, with charges of constructive hindrance in the execution of his process. Be that as it may, the statute confines the offense to resistance, and we cannot enlarge its letter by construction. " The principle that a penal statute ought to be construed strictly, is not only a sound one, but the only one consistent with our free institutions. The interpretation of

statutes has always, in modern times, been highly favorable to the liberty of the subject, and I hope will always remain so." Lord ABINGER in *Henderson v. Sherborne*, 2 M. & .W., 236.

We therefore answer to the second question reported by the judge of the circuit court, for the decision of this court, that the facts in evidence in this case are not sufficient to constitute an offense under the statute, and that there was error in the charge of the circuit court in submitting the facts to the jury as sufficient to convict the defendants.

The record will be remitted to the circuit court, with these decisions of the questions reported by the circuit judge to this court.

*By the Court.* — It is so ordered.