**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 24, 2005[*]
Decided October 25, 2005

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 04-3737

| | |
|---|---|
| JOHNNIE FLOURNOY, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 02-1231 |
| JAMES M. SCHOMIG, et al., *Defendants-Appellees.* | Harold A. Baker, *Judge.* |

**O R D E R**

In this action under 42 U.S.C. § 1983, Illinois inmate Johnnie Flournoy claims that three prison officials at Pontiac Correctional Center and a contract physician working at the institution violated his constitutional rights. The district court dismissed several of those claims for failure to exhaust administrative remedies—all but one based on the complaint alone—and several for failure to state a claim. Flournoy appeals, and we affirm in part and vacate and remand in part.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Flournoy's principal arguments concern a claim that the defendants refused to investigate a lump in his groin that he says they knew might be cancerous. According to his complaint and briefs and their attachments, the lump was discovered during a routine medical exam in October 2001 while he was imprisoned at the Joliet Correctional Center. The doctor hinted that it might be cancer and told Flournoy that he would refer him to a specialist for x-rays and a biopsy. A week later, though, Flournoy was transferred to Pontiac where defendant Arthur Funk, a contract physician, examined him in November after seeing the condition flagged in his file. Likewise hinting that the lump might be malignant, Funk said he would reexamine Flournoy in three months to see if the lump had grown.

After February 2002 passed without a follow-up visit, however, Flournoy began questioning nurses about when Dr. Funk would see him. He waited, though, until June to file a grievance; he says he waited because his grievance counselor, defendant Judith Gragert, said the matter was "out of her jurisdiction," and because the nurses advised patience and assured him that Dr. Funk would soon see him. But by June he still had not seen the doctor, and when he learned that month he was soon to be transferred to Menard Correctional Center, he submitted an "emergency grievance" to defendant Adella Jordan-Luster. *See* 20 Ill. Admin. Code § 504.840. She perceived no emergency and denied the grievance for that reason, instructing Flournoy to pursue it through his counselor. Days later Flournoy was transferred to Menard.

After arriving at Menard, Flournoy filed another grievance on June 16, 2002, using the state's procedures for submitting a grievance concerning events that arose at a different institution. *See* 20 Ill. Admin. Code § 504.870(a)(4). Instead of waiting for an answer, Flournoy brought this suit less than two weeks later. Five months later, on November 12, 2002, the Administrative Review Board denied his June 16 grievance. The review board's decision, which Flournoy submitted in opposing the defendants' motion to dismiss and includes in his appellate brief, explains that a doctor at Menard saw him on July 30, 2002, and several times afterward but noted no growth in the lump. Flournoy adds on appeal that the doctor said the lump would go away. He also told the district court in his opposition to the defendants' motion to dismiss that after the review board denied his grievance he saw at least two other doctors about the lump, one of whom said that it was not life-threatening. Flournoy amended his complaint to drop his request for an injunction compelling treatment.

The district court dismissed this claim, reasoning that Flournoy's own account of events establishes that his grievance was denied in November 2002 *after* he brought suit. Flournoy counters that the district court erred because he complied with the "intent" and "spirit" of the Prison Litigation Reform Act and lacked available administrative remedies due to his transfer to Menard.

The PLRA has a comprehensive exhaustion requirement, and prisoners may not commence a suit regarding prison conditions before exhausting all available remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). In applying this requirement, courts are to hold prisoners strictly to a prison's administrative rules. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Exhaustion is a prerequisite to bringing suit, so completing the administrative process after the suit is filed cannot overcome an exhaustion defense. *Ford v. Johnson*, 362 F.3d 395, 398-99 (7th Cir. 2004); *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Here, Flournoy admits that he did not exhaust before bringing suit, so the only question is whether the defendants rendered his administrative remedies unavailable. *See Ford*, 362 F.3d at 400; *Witzke v. Femal*, 376 F.3d 744, 749, 753–54 (7th Cir. 2004). True, as Flournoy suggests, movement out of an institution may render grievance procedures unavailable if the change in custody status effectively terminates the administrative process. *See, e.g.*, *Westefer v. Snyder*, 422 F.3d 570, 578 (7th Cir. 2005); *Witzke*, 376 F.3d at 753–54. Yet that was not the case here. If Flournoy had not been transferred, his next available step was to appeal his unsuccessful emergency grievance to the very same review board that evaluated the grievance he filed at Menard. *See* 20 Ill. Admin. Code §§ 504.850, 504.870. In both instances the regulations dictate that the review board will follow identical procedures within the same six-month time frame, *see id.* §§ 504.870(b), 504.850(f), and Flournoy has never contended otherwise. The transfer therefore had no effect on his ability to follow through with the emergency grievance. And although Flournoy argues generally that waiting for an answer to the inter-facility grievance was futile, he had to give the system a chance. *See Ford*, 362 F.3d at 400; *Perez*, 182 F.3d at 535.

Next, Flournoy argues that the district court wrongly dismissed claims that prison officials at Pontiac, including defendant Gragert and former warden James Schomig, denied him equal protection by preventing him from calling his dying father, forbidding special family visits, and denying a furlough to attend the funeral. He explains that they denied him these privileges just because he is black though they routinely provide such privileges to whites. Believing that Flournoy was trying to state two separate claims, the district court dismissed the furlough claim for failure to exhaust and the claim regarding the call to his father and special visits on the merits, reasoning that the action of Gragert and Schomig did not interfere with a federally protected right.

For his part Flournoy now insists that he did exhaust his claim concerning the funeral furlough and points to a grievance he attached to his original complaint. In making the argument, however, Flournoy has pleaded himself out of court. *See Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). The grievance that he identifies is silent about a furlough. Instead, it simply asserts that prison officials were rude to his family and waited a day before conveying news of his father's death. Thus, he admits that he did not exhaust.

As for the claim arising from denial of the call and visits, Flournoy argues that the district court misconstrued this claim to be a matter of state law. Gragert and Schomig, waiving any exhaustion argument, endorse the district court's view that there is no federal claim because denying a prisoner a chance to place a phone call and special visits does not constitute an atypical condition of confinement. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). Nevertheless, officials may not deny privileges to prisoners on the basis of race, *see Johnson v. California*, 125 S. Ct. 1141 (2005); *Sandin*, 515 U.S. at 487 n.11; *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987), so dismissal was precipitous.

Moving to the next claim, Flournoy maintains that from November 2001 to May 2002 guards at Pontiac routinely sprayed quarrelsome prisoners with mace or pepper spray and that, although he was not an intended target, the fumes injured him, too. He told guards—and notified defendants Gragert and Schomig through the grievance process—that the fumes were hurting him. He asserts that the guards just laughed and the defendants "maliciously" covered up.

The defendants moved to dismiss for failure to exhaust and submitted the affidavit of a records custodian who testified that Flournoy has submitted no grievances about this subject. The court considered this affidavit and converted the defendants' motion to dismiss into one for summary judgment. Flournoy in turn submitted an affidavit stating that when he was moved to a cell numbered 507 he gave defendant Gragert a grievance over the mace incident. She denied the grievance, so he forwarded it to the grievance officer, who never responded. He filed another grievance with Gragert sometime later but that was never answered.

In ruling against Flournoy, the court reasoned that he chose to "rest on [the] pleadings" as he provided no copies of the grievances that he says he filed to exhaust administrative remedies. Flournoy did not rest on his pleadings, however. An affidavit providing specific testimony is competent evidence to avert summary judgment. *See Dale v. Lappin*, 376 F.3d 652, 655–56 (7th Cir. 2004) (per curiam). And here, the defendants do not argue that what Flournoy said, if true, did not constitute exhaustion, nor do they respond to his suggestion that failing to answer his grievances rendered them unavailable, *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). Since exhaustion is an affirmative defense, it was their burden to do so. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Therefore, Flournoy's testimony is enough to raise an issue of fact and render summary judgment inappropriate. *See Dale*, 376 F.3d at 655–56.

Finally, Flournoy argues that the district court wrongly dismissed a claim that Gragert, Schomig, and Jordan-Luster denied him access to the courts by sabotaging the grievance procedure. The district court reasoned that there is no constitutional right to the grievance procedure, *see Antonelli v. Sheahan*, 81 F.3d

1422, 1430 (7th Cir. 1996), and dismissed on the merits.  Still, we have explained that "[p]risoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court."  *DeWalt*, 224 F.3d at 618.  To succeed on an access-to-courts claim, however, the prisoner must *plead* that the unjustified acts prevented him from pursuing a nonfrivolous claim.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 349-53 (1996).  Here, Flournoy identified no interference with any grievance that prevented him from bringing a nonfrivolous claim.

For these reasons we vacate and remand the district court's judgment insofar as the court dismissed the claim against Gragert and Schomig for refusing Flournoy the phone call and visits on the basis of race, and the claim for deliberate indifference to Flournoy's exposure to the pepper spray.  The judgment is affirmed in all other respects.

AFFIRMED in part; VACATED and REMANDED in part.