In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3152

ANGELICA LASLEY and WILLIAM G. LASLEY,

*Plaintiffs-Appellees,*

*v.*

JOHN A. MOSS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 05 C 107—**Larry J. McKinney**, *Chief Judge.*

ARGUED MARCH 30, 2007—DECIDED AUGUST 30, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and
WILLIAMS, *Circuit Judges*.

BAUER, *Circuit Judge.* Angelica Lasley sued Dr. John A.
Moss in Indiana state court for medical malpractice,
claiming that Dr. Moss failed to reasonably disclose to
her the available options for treating her thyroid condi-
tion and the risks associated with surgery. William G.
Lasley, Angelica's husband, sued Dr. Moss for loss of
consortium. Following removal to federal court on diversity
grounds, the case was submitted to a jury, which found
in favor of Mrs. Lasley on her medical malpractice claim
and in favor of Dr. Moss on Mr. Lasley's consortium claim.
Dr. Moss now appeals, challenging the district court's

rejection of a jury instruction that he had tendered to the court. He also challenges the district court's decision to grant the Lasleys' motion for judgment as a matter of law on Dr. Moss' defense that Mrs. Lasley failed to mitigate her damages. We affirm.

## I. Background

In January of 1998, Mrs. Lasley's family physician referred her to Dr. Moss, a board certified otolaryngologist, for treatment of her hyperthyroidism, a condition where the thyroid gland becomes enlarged and produces excess thyroid hormone. Dr. Moss removed Mrs. Lasley's thyroid gland in January of 1999. Prior to surgery, Mrs. Lasley signed a written consent form acknowledging that "the nature and purpose of the operation, possible alternate methods of the treatment and risks involved and the possible complications" were explained to her. During the thyroidectomy, Mrs. Lasley suffered permanent injury to her recurrent laryngeal nerve, injury to her parathyroid glands, and scarring. The injury to Mrs. Lasley's recurrent laryngeal nerve caused vocal cord paralysis with significant vocal impairment and swallowing difficulties with aspiration.

Following surgery, Mrs. Lasley saw Dr. Moss on four occasions, during which time her vocal range increased from a faint whisper to a hoarse whisper. Unhappy with her post-surgery progress, Mrs. Lasley decided not to attend her July 1999 appointment with Dr. Moss. Instead, she received her thyroid and calcium medications from her family physician and was referred to Dr. Richard Biggerstaff, another otolaryngologist. Dr. Biggerstaff examined Mrs. Lasley in November of 1999 and found that Mrs. Lasley's calcium levels were unbalanced and that her thyroid levels were low. Dr. Biggerstaff referred Mrs. Lasley to an endocrinologist, who subsequently man-

aged and continues to manage Mrs. Lasley's thyroid medication and calcium levels. Dr. Biggerstaff also recommended that Mrs. Lasley have another surgery to repair her paralyzed vocal cord. In March of 2000, Mrs. Lasley had the surgery, which improved her voice quality.

In January of 2005, Mrs. Lasley filed suit against Dr. Moss for medical malpractice, claiming that Dr. Moss had breached his duty to disclose to her the material facts relevant to her decision to undergo surgery. At trial, both sides presented evidence on whether Dr. Moss gave Mrs. Lasley complete and accurate information regarding her treatment and alternatives to that treatment. Mrs. Lasley testified that in December of 1998, she asked Dr. Moss whether she could have her hyperthyroidism treated non-surgically by undergoing radioactive iodine ("I-133") treatments. She also testified that Dr. Moss told her that the effects of I-133 treatments were uncertain and that the treatments could cause birth defects in future children.

Dr. Moss testified that he had discussed and explained to Mrs. Lasley her treatment options, including taking medicine, receiving I-133 treatments, or removing the thyroid gland surgically. Dr. Moss also told Mrs. Lasley that it was his opinion that, regardless of whether she received the I-133 treatments, she would need the surgery because of the size of her thyroid goiter. He did not explain to Mrs. Lasley that the size of her thyroid gland increased the risk of complications from surgery. Dr. Moss denied telling Mrs. Lasley that the effects of I-133 could cause birth defects. He did admit that he had told Mrs. Lasley that he was worried that "20 years down the road [I-133 treatments] might cause some harmful effects, such as cancer, leukemia, or lymphoma." Four physicians testified that there is no evidence that I-133 treatments cause such problems. The physicians also testified that Dr. Moss' statement regarding the I-133 treatments

violated the standard of care because it provided Mrs. Lasley with inaccurate information regarding her treatment options.

After both sides rested, Dr. Moss tendered a jury instruction seeking to inform the jury that there was a rebuttable presumption that Mrs. Lasley's written consent was an informed consent. Dr. Moss proposed jury instruction was based on IND. CODE § 34-18-12-2 (1998), which states:

> If a patient's written consent is:
>
> (1) signed by the patient or the patient's authorized representative;
>
> (2) witnessed by an individual at least eighteen (18) years of age; and
>
> (3) explained, orally or in the written consent, to the patient or the patient's authorized representative before a treatment, procedure, examination, or test is undertaken;
>
> a rebuttable presumption is created that the consent is an informed consent.

The district court refused to give Dr. Moss' proposed instruction. Instead, the district court instructed the jury that Mrs. Lasley was required to prove by a preponderance of the evidence that Dr. Moss had a duty to inform her of important facts concerning alternative treatments for her thyroid disease and of the risks of surgery; that Dr. Moss breached that duty to her by not informing her of those facts; that a reasonable person in the same or similar circumstances as her would not have consented to surgery had she been informed of those facts; and that Dr. Moss' breach of duty proximately caused her injury. The jury returned a verdict in favor of Mrs. Lasley.

## II.  Discussion

On appeal, Dr. Moss presents two arguments. First, he argues that the district court erred by not giving the jury his rebuttable presumption instruction. Second, he contends that the district court erred in granting judgment as a matter of law in favor of the Lasleys on Dr. Moss' failure to mitigate defense. We will address each issue in turn.

### A.  Jury Instruction

Our review of jury instructions is limited. *Doe v. Burnham*, 6 F.3d 476, 479 (7th Cir. 1993). We construe jury instructions in their entirety in order to determine whether as a whole the instructions were sufficient to inform the jury correctly of the applicable law. *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 725 (7th Cir. 1994) (citations omitted). A district court is not required to issue a perfect set of jury instructions; however, the issued instructions must be correct legal statements and must convey the relevant legal principles in full. *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005) (citations omitted). We will reverse "only if the instruction misguides the jury so much that a litigant is prejudiced." *Burnham,* 6 F.3d at 479. Because we must apply state law to matters of substantive law when exercising diversity jurisdiction, the propriety of Dr. Moss' tendered instruction is controlled by Indiana law. *Trytko,* 28 F.3d at 725 (citation omitted). Here, reversal would be warranted only if Dr. Moss demonstrated that his proposed instruction was a correct statement of Indiana law and that the district court's refusal to give his instruction caused him prejudice.

Although Dr. Moss' proposed instruction provided an accurate recitation of IND. CODE § 34-18-12-2, it failed to

provide a complete statement of Indiana law. Section 34-18-12-2 does not stand alone. Section 34-18-12-3 provides that the explanation given in accordance with § 34-18-12-2(3) must include the following information to create informed consent:

> (1) The general nature of the patient's condition.
> (2) The proposed treatment, procedure, examination, or test.
> (3) The expected outcome of the treatment, procedure, examination, or test.
> (4) The material risks of the treatment, procedure, examination, or test.
> (5) The reasonable alternatives to the treatment, procedure, examination, or test.

IND. CODE § 34-18-12-3 (1998). Before a rebuttable presumption is created under § 34-18-12-2, the party asserting the presumption must show that the patient was provided an explanation of the information required by § 34-18-12-3. In order to provide a complete statement of law, Dr. Moss' proposed instruction had to include both §§ 34-18-12-2 and 3. Because Dr. Moss' tendered instruction failed to convey the relevant legal principles in full, it was properly rejected. The district court properly instructed the jury on informed consent: Mrs. Lasley bore the burden of proving that Dr. Moss had breached his duty to disclose to her the material risks of and alternative treatments to the thyroidectomy.

## B. Mitigation of Damages

We review a district court's decision to grant judgment as a matter of law *de novo*. *Zimmerman v. Chicago Bd. of Trade*, 360 F.3d 612, 623 (7th Cir. 2004). Judgment as a matter of law is appropriate only "[i]f during a trial by jury a party has been fully heard on an issue and there

is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . ." FED. R. CIV. P. 50. In considering a Rule 50 motion, a court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor. *Zimmerman,* 360 F.3d at 623.

The affirmative defense of failure to mitigate damages "addresses conduct by an injured party that aggravates or increases the party's injuries." *Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) (citation omitted). When asserting such a defense, the defendant must prove by a preponderance of the evidence that (1) plaintiff failed to exercise reasonable care to mitigate his or her post-injury damages; and (2) plaintiff's failure to exercise reasonable care caused the plaintiff to suffer an identifiable item of harm not attributable to the defendant's negligent conduct. *Id*. at 1188.

Dr. Moss raised the failure to mitigate damages defense based on Mrs. Lasley's decision not to seek treatment from him between July and November 1999. He contends that because he was not given the opportunity to make medication adjustments during these five months, he should not be responsible for Mrs. Lasley's physical pain or mental suffering related to this time period. There is insufficient evidence to support Dr. Moss' failure to mitigate damages defense. The evidence offered at trial established that Mrs. Lasley exercised reasonable care in mitigating her post-injury damages. She followed-up with Dr. Moss after her surgery on four separate occasions. Mrs. Lasley decided to stop seeing Dr. Moss because she was unhappy with her post-surgery progress. This decision was reasonable, as were Mrs. Lasley's subsequent actions. After discontinuing her treating with Dr. Moss, Mrs. Lasley received a referral to another otolaryngologist. She also had her family physician monitor and refill her thyroid and calcium medications

until she was able to visit with Dr. Biggerstaff in Novem-
ber of 1999.

Because Dr. Moss was unable to prove that Mrs. Lasley
acted unreasonably in deciding to seek treatment from
other physicians, the district court did not err in granting
the Lasley's motion. The evidence supports the conclu-
sion that Mrs. Lasley would not have suffered her
injuries—vocal cord paralysis, parathyroid injury, and
scarring—had she been treated with I-133 treatments
instead of surgery. It further supports that her efforts
to mitigate damages were reasonable and about all that
could be expected.

For the foregoing reasons, we AFFIRM.

A true Copy:

          Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*