In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3505

DAVID HOLLINS,

*Plaintiff-Appellant,*

*v.*

CITY OF MILWAUKEE, CHARLES LIBAL, AND
DEMETRIUS RITT,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:05-cv-00623-CNC—**James T. Moody**,* *Judge.*

ARGUED APRIL 10, 2009—DECIDED JULY 31, 2009

Before BAUER, FLAUM and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.*    On June 23, 2002, Milwaukee
police officers executed a search warrant at a suspected
drug house. David Hollins, a passerby, stood in close

* The Honorable James T. Moody, Senior Judge of the United
States District Court for the Northern District of Indiana,
sitting by designation.

proximity and photographed the scene. After Hollins failed to comply with the officers' instruction to leave the immediate area, he was forcibly arrested. Hollins sued the City of Milwaukee and Milwaukee Police Officers Charles Libal and Demetrius Ritt, claiming that the defendants violated his First, Fourth, and Fourteenth Amendment rights. Defendants moved for partial summary judgment. The district court granted the motion in part, dismissing the City as a defendant but finding that triable issues of fact remained concerning several of Hollins' claims against the officers. At trial, the jury found in favor of Officers Libal and Ritt. On appeal, Hollins argues that the district court improperly granted summary judgment in favor of the defendants and, further, committed reversible error at trial. We affirm.

## I. BACKGROUND

On June 23, 2002, officers from the Milwaukee Police Department searched a residence located at 2004 North 35th Street in the city of Milwaukee. Police had received information that the suspects inside the residence were armed and that look-outs may have been present in the vicinity.

Officer Ritt was one of the officers conducting the search, while Officer Libal was acting as a containment officer; Libal's duties included preventing individuals from entering or exiting the residence or surrounding area. The containment area included both sides of 35th Street.

Hollins was walking down 35th street and came upon the police scene as the officers were in the process of

executing the search. Hollins, a freelance photographer, took out his camera and began snapping pictures from across the four lane street in front of the residence that was being searched. While maintaining his position of containment, Libal noticed Hollins. According to Libal, he was concerned about Hollins' presence there, believing it created a risk for both Hollins and the officers. Libal also did not know if Hollins was involved with or related to the targets inside the residence. Libal crossed the street and walked toward Hollins; he ordered Hollins to move south of his location and out of the area directly in front of the purported drug house.

Hollins alleges that after Libal crossed the street, he pushed Hollins to the ground and ordered him "to get the fuck out of here" or he was going to "slap him with a loitering citation." Libal denies making these comments and claims that Hollins was physically escorted, not pushed, in a direction away from the police scene. Hollins moved a short distance south before stopping and declaring that he had a right to be there. He refused to move further and requested Libal's name and badge number. At that point, Hollins claims, Libal responded, "that's it, fucker, you are going to jail." With the assistance of Ritt, Libal then arrested Hollins. The parties differ as to the amount of force Libal, Ritt, and the other officers used in making the arrest, and as to the amount of resistance Hollins displayed as it occurred, but Hollins asserts that he was choked, thrown to the ground, and maced; his camera was also broken. In any event, Libal issued a municipal citation to Hollins for resisting or obstructing an officer.

The matter proceeded to trial, where Hollins was found guilty of violating the ordinance and ordered to pay a fine. Hollins did not appeal the judgment entered by the municipal court. On June 8, 2005, Hollins brought suit regarding the circumstances surrounding his arrest. His complaint, later amended, alleged that Officers Libal and Ritt violated his First, Fourth, and Fourteenth Amendment rights, including his rights to free speech and freedom from unreasonable searches and seizures. Hollins also brought a claim of municipal liability under 42 U.S.C. § 1983, alleging that the City of Milwaukee and its former and current police chiefs failed to properly train city police officers, which led to the wrongful arrest and excessive use of force.

On October 2, 2006, the defendants filed a motion for partial summary judgment as a matter of law on several of Hollins' claims. Because Hollins maintained that he was unnecessarily beaten and sprayed with pepper spray by the officers, the parties agreed that there were triable issues of fact concerning Hollins' excessive force claim.

On May 31, 2007, the district court granted the motion in part. The court found that the City of Milwaukee and its police chiefs (former and current) were entitled to judgment as a matter of law on Hollins' § 1983 claim of municipal liability; accordingly, those defendants were dismissed as parties to the suit. The court also dismissed Hollins' First Amendment and due process claims against Libal and Ritt; however, his claim of unlawful arrest and detention as to Officer Libal, and excessive

use of force, as to both Libal and Ritt, proceeded to trial. A jury found in favor of Libal and Ritt and the court entered judgment on September 2, 2008.

On appeal, Hollins contends that the district court improperly dismissed his § 1983 and First Amendment claims at summary judgment and further erred in several rulings it made during trial. He argues that triable issues of fact exist concerning whether the City of Milwaukee failed to properly train its police officers regarding the authority to remove, arrest, and forcibly detain a citizen; and whether Libal and Ritt violated his First Amendment right to photograph the police search. Hollins also argues that the district court erred by: (1) failing to ask potential jurors Hollins' proposed question concerning possible racial biases; (2) limiting the cross-examination of Officer Ritt concerning previous allegations of official misconduct; and (3) refusing to submit Hollins' proposed instruction to the jury concerning the scope of the relevant municipal ordinance and the lawfulness of his arrest. We first consider Hollins' claims dismissed at summary judgment, then proceed to the alleged errors at trial.

We review a district court's grant of summary judgment de novo. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008) (citations omitted). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Darst*, 512 F.3d at 907.

In his amended complaint, Hollins claimed that the City of Milwaukee and its former and current police chiefs were deliberately indifferent regarding the training of Milwaukee police officers in several areas. On appeal, Hollins presents a largely incoherent argument on the above claim. Rather than focus on the police training issue raised below, Hollins continues to assert that his Fourth Amendment rights were violated. However, Hollins' claims of unlawful arrest and detention and excessive use of force proceeded to trial, where a jury ruled against him. Hollins also appears to challenge the constitutionality of Section 105-138 of the Milwaukee Code of Ordinances, which prohibits resisting or obstructing an officer in the course of duty. Hollins did not raise such a challenge in his suit before the district court and cannot do so for the first time on appeal. *Hicks v. Midwest Transit, Inc*. 500 F.3d 647, 652 (7th Cir. 2007).

In the event that, somewhere within the fog of Hollins' brief there is indeed a claim that the City of Milwaukee failed to properly train its officers on proper arrest, detention, and use of force procedures, we consider that argument now.

To impose liability under § 1983 on the City of Milwaukee, Hollins must prove that the constitutional deprivation was caused by an official municipal policy or custom. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). To establish a municipal policy or custom, Hollins must allege a specific pattern or series of incidents that support the general allegation of a custom or policy. The inadequacy of police training may serve

as the basis for § 1983 liability, but only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Hollins must set forth some evidence that the City of Milwaukee's failure to train its officers amounted to deliberate indifference to the rights of individuals with whom the officers came into contact. *Id*. He fails to do so. Instead, Hollins merely asserted that a contention made by the City of Milwaukee in its response to Hollins' complaint, that "an officer may order a citizen from a public place when the officer perceives that the safety of the citizen, other citizens or officers in the area may be put at risk," demonstrates such deliberate indifference because of the unfettered authority it provides to Milwaukee police. As the district court noted, this is insufficient. Hollins does not identify any policy, practice or custom that deprived him of his constitutional rights. Moreover, the City of Milwaukee presented unrebutted evidence demonstrating that its officers are trained in the areas of civil rights, constitutional law, arrest and detention procedures, use of force, and the Milwaukee Code of Ordinances, including the resisting and obstructing ordinance at issue. Therefore, we agree with the district court that Hollins has failed to raise a genuine issue of material fact on the claim of municipal liability.

Hollins next claims that the district court improperly granted summary judgment in favor of Libal and Ritt on his First Amendment claim, contending that his rights

were violated when the officers ordered his removal from the police scene for photographing the execution of the search warrant.

The officers, however, assert that Hollins' picture-taking had nothing to do with his arrest. Rather, they maintain, Hollins was directed to leave the area because he stood directly across the street from a purported drug house, where a high-risk search warrant was in the process of being executed. Hollins was arrested because he failed to comply with this instruction. The officers note that Hollins was charged with, and subsequently found guilty of, violating the municipal ordinance. The district court found that Hollins failed to address this issue in his response brief and offered no evidence to support his claim of a First Amendment violation. On appeal, Hollins fares no better. His allegation remains unsupported and, therefore, we find that summary judgment was proper.

Proceeding on to Hollins' claims emanating from trial, he first contends that the district court erred by not asking potential jurors his proposed question designed to identify possible racial biases. We review the district's court alleged error during voir dire for an abuse of discretion. *Dominguez v. Hendley*, 545 F.3d 585, 592 (7th Cir. 2008).

Hollins challenges the district court's refusal to ask potential jurors the question, "[h]ow many of you believe African-Americans have a tendency to commit crime more than other people?" According to Hollins, such an inquiry was necessary because the "biases" and "racial prejudices" of law enforcement were a fundamental

issue at trial. Hollins is mistaken. Hollins was not a criminal defendant in this trial, but a civil plaintiff. Furthermore, he had not raised any racially-focused claim in his complaint. The proposed question had nothing to do with either the law or facts at issue in this case. Rather, had the court asked the question, it would have raised a racial issue where none was present and risked sidetracking the jury from the real issues at trial—whether Libal and Ritt had probable cause to arrest Hollins and whether they used excessive force in doing so. Finally, as a review of the record makes clear, the district court properly questioned the potential jurors concerning all relevant areas of inquiry in order to elicit prejudices or biases of any kind. We find no abuse of discretion.

Hollins next contends that the district court erred by not allowing into evidence questions concerning allegations of misconduct by Ritt. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005).

Before trial, the district court granted a motion in limine precluding Hollins from introducing "certain employment and personnel records" during his case-in-chief. The records concerned a police department investigation into an allegation that Ritt had falsified police reports; however, no finding was ever made that Ritt actually committed the wrongdoing. Following the conclusion of Hollins' case-in-chief, the defense called Ritt to testify. After direct examination, Hollins sought to cross-examine Ritt about the alleged misconduct. Hollins' counsel began, "Detective Ritt, were you asked to leave the Milwaukee

Police Department because of fabrication—." Defense counsel objected. After meeting with the parties outside the presence of the jury, the court allowed the complete question to be asked, but excluded all further questioning on the matter. Ritt responded that he had not been asked to leave the Milwaukee Police Department.

Hollins claims that the court erred in precluding further questioning because the allegation went to Ritt's credibility, and "questions of credibility can always be asked." Hollins also argues that the questioning was not precluded by the prior motion in limine ruling because the ruling applied only to Hollins' case-in-chief.

Although Hollins' questioning may not have amounted to a violation of the limine ruling, the court acted well within its discretion in disallowing the inquiry. Federal Rule of Evidence 608(b) provides that, although specific instances of misconduct of a witness intended for the purposes of attacking or supporting the witness' character for truthfulness may not be proved by extrinsic evidence, they may, in the discretion of the court, be inquired into on cross-examination of a witness. However, the probative value of such evidence must still not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

In this instance, the allegations of wrongdoing were neither proven nor found to have any merit and thus offered little indicia of reliability. The district court, acting within its discretion, determined that further cross-examination into the alleged misconduct would have been of limited probative value, and we agree. We find no abuse of discretion.

Finally, Hollins argues that the district the court erred by not presenting the jury with Hollins' proposed instruction concerning the lawfulness of his arrest and the scope of the municipal ordinance that Hollins was charged with violating. Our review of a district court's rejection of a proposed jury instruction is limited. *Maltby v. Winston,* 36 F.3d 548, 560 (7th Cir. 1994). We determine whether the given instructions as a whole were sufficient to inform the jury correctly of the applicable law and will reverse only if the instruction so misguided the jury as to prejudice the litigant. *Lasley v. Moss,* 500 F.3d 586, 589 (7th Cir. 2007).

Hollins sought the following instruction concerning whether Hollins' arrest was justified under the City of Milwaukee's resisting or obstructing an officer ordinance:

> You heard evidence about whether Defendant's conduct complied with the Milwaukee Ordinance prohibiting arresting or obstructing an officer. You may consider the ordinance in your deliberations. But remember that the issue is whether Defendant had probable cause to arrest David Hollins. The ordinance requires only knowing resistance or obstruction. A verbal refusal to comply with an officer's order is not sufficient. Nor is a disagreement with the officer's order resistance or obstruction. A physical act of force is necessary to constitute resisting arrest.

Hollins claims that, because the jury was not instructed according to the language above, its verdict was likely based on an "erroneous belief" of the ordinance's scope. Hollins' argument fails for several reasons. First, the

proposed instruction merely represents Hollins' inter-
pretation of the municipal ordinance, one for which he
offers no credible support or authority. The section of the
Milwaukee Code of Ordinances relating to resisting or
obstructing an officer provides in relevant part that, "[n]o
person shall knowingly resist or obstruct an officer
while the officer is doing any act in an official capacity
and with lawful authority." Milwaukee Code of Ordi-
nances § 105-138. Hollins claims that a verbal refusal to
comply with an officer's order is insufficient to con-
stitute a violation of the municipal ordinance. In support,
he cites an 1875 Wisconsin case, *State v. Welch*, 37 Wis.
196 (Wis. 1875), for the proposition that "mere words
cannot constitute resistance." He cites a more recent case,
*State v. Dearborn*, 758 N.W.2d 463 (Wis. App. 2008), for the
proposition that *Welch* is still "relevant in determining
the legislature's intent." However, neither of these cases
stand for the principal that "obstructing" an officer re-
quires something more than refusing to comply with a
verbal command given in the course of carrying out
official duties.

The issue in *Welch* concerned whether the actions of a
defendant who caused horses to run away from law
enforcement attempting to serve a writ of replevin on
the defendant for the horses amounted to "resisting."
*Welch*, 37 Wis. at 198-99. The court held that it did not.
*Id*. at 204. Although the court did not define "obstruct," it
did indicate that the word included conduct that "resist"
does not. *Id*. at 201. The *Dearborn* court sought to
interpret the legislature's intent of a similar Wisconsin
state statute. *Dearborn*, 758 N.W.2d at 469-71. Noting the

distinction between "resisting" and "obstructing" in *Welch*, the court in *Dearborn* concluded that "in proscribing obstructing in addition to resisting," the legislature "intended to proscribe a broader range of conduct than resisting." *Id*. at 471.

Hollins' contention is undermined by the very authority he uses to support it. Hollins offers no authority to support his assertion that disobeying a police officer's lawful order to leave the area while the officer is in the course of performing his official duties cannot constitute "obstructing."

More importantly, the jury was not asked to determine whether Hollins violated this ordinance, but rather whether the officers had probable cause to effectuate Hollins' arrest. Had Hollins' proposed instruction been accepted by the court, it may well have confused the jury concerning the question it was being asked to answer. Finally, the instructions that the court did provide were correct legal statements and informed the jury of the relevant legal principles that were to be considered. Once again, we find no abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.