NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2011[*]
Decided April 15, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3610

| | |
|---|---|
| JOHNNIE FLOURNOY, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 02-1231 |
| JAMES M. SCHOMIG, et al., *Defendants-Appellees*. | Harold A. Baker, *Judge*. |

**O R D E R**

Johnnie Flournoy, an Illinois inmate serving a life sentence for first degree murder, appeals from the grant of summary judgment on his suit under 42 U.S.C. § 1983, claiming that several prison officials violated his constitutional rights by exposing him to pepper-spray fumes and by denying him certain prison privileges. Flournoy appeals, arguing that disputed issues of fact remain. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

From 2001 to 2002 Flournoy was housed at Pontiac Correctional Center, a maximum security prison. He claims that he was exposed to fumes there at least eight times when prison guards pepper-sprayed other inmates. The second-hand spray, he says, aggravated his glaucoma, though he never sought medical treatment for his eyes while at Pontiac. According to Flournoy, a correctional officer told him that officers were pepper-spraying inmates to punish them for gang activity in the prison. When inmates asked officers to air out the cells, Flournoy asserted in an affidavit, the onlooking officers ignored or mocked them behind a sealed gallery.

According to the prison's operating rules, the warden—at the time, defendant James Schomig—must approve the use of pepper spray, but may (and did) delegate approval to a ranking officer in the cell house. *See* ILL. ADMIN. CODE tit. 20, § 501.15(a). The parties explain that each cell house operates as "a prison within a prison" at Pontiac. If an inmate is sprayed, he may rinse and receive medical attention upon request, and any other inmate affected by the fumes may also request medical attention and rinse with the water in his cell.

Flournoy says that he filed three separate, informal grievances regarding the use of pepper spray with a correctional counselor, defendant Judith Gragert. Gragert recounts receiving only one, to which she responded by telling Flournoy that if he got sick, he should contact a nurse.

Exposure to pepper spray is not Flournoy's only complaint regarding his incarceration at Pontiac. He also asserts that Schomig and Gragert refused on account of Flournoy's race to allow him to phone his dying father. While at Pontiac, Flournoy was allowed to phone his ailing father once a month, but Flournoy wasn't allowed to speak with him when he was on his deathbed. It is undisputed that a request for a special call to a sick relative is granted by the warden or his designee, but these requests were not always forwarded if administrative staff could not verify that the relative was in critical condition. As memorialized in a standard prison form submitted to the district court, Flournoy's sister called the prison and told Tonya Davis, an office assistant, that Flournoy's father had been hospitalized. In accord with prison policy, Davis called the hospital to verify the information and was told that Flournoy's father was in a rehabilitation center and not critically ill. Because she couldn't verify the information, Davis never forwarded the request to Gragert or Schomig. Flournoy never had a chance to speak with his father before he died; his father passed away that day.

Flournoy sued Schomig, Gragert, and several unnamed prison officials, claiming, among other things, that they violated his Eighth Amendment right by exposing him to pepper-spray fumes that aggravated his glaucoma and that they violated his Fourteenth

Amendment right by denying him prison privileges, i.e., refusing to let him call his dying father, because he is African-American. The district court dismissed Flournoy's Fourteenth Amendment claim for failure to state a claim and granted summary judgment for the defendants on his Eighth Amendment claim, concluding that Flournoy failed to exhaust all available administrative remedies, *see* 42 U.S.C. § 1997e(a). We vacated and remanded the judgment insofar that Flournoy had stated a Fourteenth Amendment claim and that summary judgment was premature on the Eighth Amendment claim. *See Flournoy v. Schomig,* 152 F. App'x 535, 538-39 (7th Cir. 2005) (nonprecedential decision). After further proceedings, the district court granted summary judgment, concluding that neither Schomig nor Gragert was personally involved in the pepper-spraying incidents or the denial of his emergency-call request. With regard to Schomig, the court concluded that Flournoy had not shown he was personally involved because, according to the court, none of the evidence suggested that Schomig knew about the pepper-spraying or Flournoy's glaucoma. As for Gragert, the court observed that she was responsible for resolving inmates' complaints only when they did not involve security or medical matters of the sort that arose here. The district court also refused to allow Flournoy leave to amend his complaint to name the unnamed prison officials.

On appeal Flournoy argues that whether Schomig was personally involved in the alleged exposure to pepper spray is a disputed issue of material fact. Flournoy maintains that a reasonable jury could conclude that the warden knew about and condoned a prison practice in which guards closed windows, pepper-sprayed inmates, prohibited them from rinsing, and then denied them medical care. To show that the warden knew of the alleged practice, Flournoy points to the grievances he filed and his affidavit in which he recounts a correctional officer's comment that inmates were sprayed in retaliation for gang activity. But nothing in the record suggests that the warden condoned of or knew of the alleged practice. The correctional officer's statement does not connect Schomig personally to the pepper spraying, nor does it suffice to impute liability to the warden merely because of his supervisory role. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010). And Flournoy's grievances likewise do not show Schomig's knowledge of the situation because Schomig's responsibilities, it is undisputed, did not include reviewing grievances. And it is further undisputed that the ranking officer within the cell house, not the warden, decided when pepper spray was necessary.

Also, Flournoy asserts for the first time on appeal that he personally told Schomig during his rounds that the guards were misusing pepper spray. However, arguments not raised before the district court may not be raised for the first time on appeal. *See Hollins v. City of Milwaukee*, 574 F.3d 822, 827 (7th Cir. 2009). Yet even if Schomig did know about the pepper-spraying practice, Flournoy has not shown that Schomig was aware Flournoy had glaucoma. Without showing that Schomig knew he was exposing Flournoy to a substantial

risk of serious harm, Schomig could not have been deliberately indifferent to Flournoy's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Regarding Flournoy's claim against Gragert, he insists that a fact issue remains over her personal involvement because he filed a grievance with her about the pepper spray. But it is undisputed that she had no authority to approve or disapprove the use of force or to resolve medical grievances (because she is not a licensed medical professional). The most that can be said is that she "did nothing, when she might have gone beyond the requirements of her job," which is insufficient to show deliberate indifference. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009); *see George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Regarding the equal protection claim, Flournoy challenges the district court's conclusion that the evidence showed that Schomig and Gragert were not personally involved in denying him on account of his race the opportunity to place an emergency call to his father. He says that the prison's logs, which have been destroyed, would have shown that the defendants, not Ms. Davis, took the call from his sister. The logs' destruction, he maintains, warrants an inference that they contained adverse information. To warrant this inference however, Flournoy had to show that the defendants intentionally destroyed the logs in bad faith, *see Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 645 (7th Cir. 2008), and he has not pointed to any evidence suggesting that this was the case here. Neither has he pointed to any other evidence to support his equal protection claim, and thus, the district court correctly granted summary judgment for the defendants on this claim as well. Flournoy also challenges the court's adverse ruling on his claim over funeral furlough, but we ruled in his last appeal that this claim was rightly dismissed for failure to exhaust. *Flournoy*, 152 F. App'x at 538.

Last, Flournoy contends that the district court should have allowed him to amend his complaint to identify the unnamed prison officials whose names he learned after carrying out discovery. But the district judge did not abuse his discretion in denying Flournoy's request because the statute of limitations (two years in Illinois, 735 ILCS 5/13-202; *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008)), had run. The untimely amendment would not "relate back" to the date of his original complaint because Flournoy made no mistake; he simply lacked knowledge of the proper defendants. *See Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006).

We thus AFFIRM the judgment of the district court.