# In the

# United States Court of Appeals

## For the Seventh Circuit

—————

No. 01-3709

BOBBY FORD,

Plaintiff-Appellant,

v.

DONALD JOHNSON, *et al.*,

Defendants-Appellees.

—————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8464—**Harry D. Leinenweber**, *Judge*.

—————

ARGUED JANUARY 12, 2004—DECIDED MARCH 24, 2004

—————

Before POSNER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Bobby Ford contends in this suit under 42 U.S.C. §1983 that guards at Stateville Correctional Center in Illinois violated his constitutional rights by beating him without provocation and then refusing to provide medical care for the injuries they inflicted. Ford filed a grievance and appealed from its denial. His appeal was referred to the prison's Administrative Review Board, which called him in for an interview to get his side of the story. Ford refused to cooperate, telling the Board that, because he had a federal suit under way, it was no

longer necessary to participate in the grievance process. The Board then resolved the grievance against Ford—not because he had balked, but on the merits. The district judge nonetheless dismissed Ford's suit under 42 U.S.C. §1997e(a), which provides:

> No action shall be brought with respect to prison conditions under [42 U.S.C. §1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This statute applies to isolated instances of misconduct as well as to official practices, and some remedy may be "available" whether or not the prisoner prefers a balm (such as money damages) that the grievance process does not provide. See *Porter v. Nussle*, 524 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The district judge wrote that, by refusing to participate in the appellate process before the Board, Ford had neglected to exhaust available remedies. (The district judge also had a second ground, which we discuss below.)

In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system. See *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002); *Strong v. David*, 297 F.3d 646 (7th Cir. 2002). The district judge invoked this principle when dismissing Ford's suit: the Board required him to explain what had happened, Ford refused and by doing so abandoned the grievance, the judge believed. Similar reasoning supports dismissal of a civil suit for failure to prosecute. No rule of law *requires* a plaintiff to testify (or give a deposition) in his own suit, but failure to do so may justify a termination on procedural grounds without reaching the merits. See *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589 (7th Cir. 1992). Just as courts may dismiss suits for failure to

cooperate, so administrative bodies may dismiss grievances for lack of cooperation; in either case this procedural default blocks later attempts to litigate the merits.

Yet by analogizing exhaustion under §1997e(a) to exhaustion under 28 U.S.C. §2254, decisions such as *Pozo* and *Strong* imply a corollary that is established in collateral-attack jurisprudence: A procedural default in state proceedings is fatal to the litigation in federal court only if the state tribunal explicitly relies on that default. See, e.g., *Harris v. Reed*, 489 U.S. 255 (1989); *Brooks v. Walls*, 279 F.3d 518 (7th Cir.), rehearing denied, 301 F.3d 839 (2002). If the tribunal decides the merits, without treating procedural default as an independent ground of decision, then the federal court infers that the parties must have done whatever the tribunal deemed necessary to permit a reliable decision on the merits. By deciding Ford's appeal without invoking a forfeiture doctrine, the Administrative Review Board established that Ford had exhausted his state remedies. Neither a court nor an agency is *required* to dismiss a proceeding when the complainant fails to testify; if the proceeding reaches a decision on the merits, it is fully reviewable later (here by an independent suit under §1983).

Ford's real problem, and the district court's second ground, is timing. Section 1997e(a) says that exhaustion must precede litigation. "No action shall be brought" until exhaustion has been completed. See *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999). Requirements of this kind are common: no suit under the Federal Tort Claims Act until the agency has had time to rule on a claim for damages, no suit under the employment-discrimination laws until the parties have had time for administrative conciliation. And these rules routinely are enforced, as in *Perez*, by dismissing a suit that begins too soon, even if the plaintiff exhausts his administrative remedies while the litigation is pending. See, e.g., *McNeil*

*v. United States*, 508 U.S. 106 (1993); *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989). Rules of the form "negotiate now, litigate later" or "administrative remedies first, litigation second" reflect a belief that postponing suits induces people to concentrate their attention on negotiation or alternative dispute resolution, so that some fraction of the time parties will not need to litigate at all. Once litigation commences, however, that casts a pall over negotiation or the administrative process, because it commits both resources and mental energies to court. Some persons are bound to do exactly what Ford did—to declare that the administrative process is irrelevant once suit begins. To prevent this subversion of efforts to resolve matters out of court, it is essential to keep the courthouse doors closed until those efforts have run their course.

Ford jumped the gun, just as he told the Administrative Review Board. Ford mailed his complaint to the district court in December 1999. It was stamped "received" on December 28. Two days later, the prison system announced its final decision. Now Ford stakes his all on the proposition that he had not "brought" suit (the word used in §1997e(a)) before December 30, because a suit does not begin until the complaint is "filed", while his had just been "received." Prisoners' complaints are reviewed under 28 U.S.C. §1915A and not filed (nor are the defendants notified and served with process) until the district judge finds that they pass the statutory screen. Litigants also must pay all required fees, or receive permission under 28 U.S.C. §1915 to proceed *in forma pauperis*, before their complaints are "filed." See *Williams-Guice v. Chicago Board of Education*, 45 F.3d 161 (7th Cir. 1995). Ford relies on Fed. R. Civ. P. 3, which says that "[a] civil action is commenced by filing a complaint with the court." If the action is not "commenced" until the complaint has been "filed," Ford maintains, then it has not been "brought" either.

As we discussed at length in *Williams-Guice*, the reasons for linking commencement to filing concern not only the judiciary's need to collect the prescribed fees but also the defendants' entitlement to notice—for the date of filing affects both the statute of limitations and the time to serve the defendants with process under Fed. R. Civ. P. 4(m). Neither fee collection nor notice to the adversary is at issue when applying §1997e(a). Postponing litigation while the administrative process continues is a different objective altogether, which may explain why Congress used a different word: "brought" rather than "filed" or "commenced." Only equating "brought" with "got under way" or some similar phrase ensures that the litigation does not start until the administrative process has ended. Ford launched the suit while the administrative process was ongoing and then told the Board to go fly a kite. He thought that mailing the complaint to the court was enough to bring suit; we hold that, for purposes of §1997e(a), it was. Otherwise the statute cannot work. What sense would it make to allow a prisoner to initiate litigation before exhausting his intra-prison remedies, provided the prisoner takes care not to pay the filing fee until later?

Counsel representing Ford cite several appellate opinions that, they say, define "brought" as "filed." None of these is dispositive, because none actually faced the issue whether §1997e(a) blocks a suit when the complaint was received by the district clerk while the administrative process was ongoing but "filed" only after it ended. The language counsel has found was uttered in passing rather than the result of a need to resolve this particular question. As far as we know, ours is the first appellate opinion that has had to interpret the word "brought" in §1997e(a). What's more, the decisions on which counsel rely do not support Ford's position. Consider *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1990), and *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000), the two decisions on which Ford places

principal reliance. Each of these says that a prisoner cannot "file" a suit until after the administrative process ends. That statement is true even if a suit is "brought" when the papers are lodged. Because filing never occurs earlier than the date on which the district clerk receives the complaint, the statements in these two opinions are accurate whether or not the word "brought" is best understood as "tendered to the court for filing." *Kerr v. Puckett*, 138 F.3d 321 (7th Cir. 1998), offers even less help. Counsel tell us that *Kerr* holds "that 'brought' as used in section 1997e(e) refers to the time the lawsuit was commenced". The suggestion is that the court used the magic word from Rule 3 and thus equated "bring" with "file." But the word "commence" does not appear in *Kerr*, and the word "file" appears only once, in the phrase "[h]e filed a second suit." Nothing in *Kerr* turns on, or even remarks on, shadings among the words "bring," "commence," and "file." Some of the decisions on which Ford's counsel rely actually undercut their argument. See *Chandler v. Department of Corrections*, 145 F.3d 1355, 1359 (D.C. Cir. 1998) ("the phrase 'bring a civil action' [in §1915] means to *initiate* a suit"); *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998) ("to implement this statutory scheme, we must determine if danger exists at the time the plaintiff *seeks to* file his complaint"). The language we have italicized shows that these courts see a difference between "filing" a suit and other steps—such as "initiating" suit or "seeking to file" suit—that get litigation under way. Interpreting "bring" for purposes of §1997e(a) as either "seeks to file" or "initiate" would be a helpful translation, but either understanding dooms Ford's suit.

One other principle looks in the same direction. A prisoner's civil action may be dismissed under §1915(e)(2) or §1915A before any fees have been paid, and thus before "filing" occurs. We held in *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002), that failure to exhaust administrative remedies can justify a dismissal under these sections. Yet

such a dismissal would not be proper if the action is not even "brought" until after the screening stage. On Ford's view, it would be impossible to use §1997e(a) to dismiss any action under §1915 or §1915A, because until it passes those screens it is not "filed" and therefore cannot be premature. But once it had passed the screen, and been "filed," then it could be dismissed immediately. We can and do avoid such pointless paper shuffling by holding that an action is "brought" for purposes of §1997e(a) when the complaint is tendered to the district clerk. (Ford's contention that treating a complaint as "brought" before it has been "filed" would increase the workload of the clerk is puzzling. Failure to exhaust administrative remedies is an affirmative defense. How the judge handles that defense does not affect what the district clerk does with incoming papers.)

According to Ford, he did not need to exhaust administrative remedies at all, because none was "available" to him. This point is hard to grasp, because the prison offered a complaint process, which he used, plus an appeal, which he took. How can it be that administrative procedures actually used, leading to a decision by the Administrative Review Board, were "unavailable"? Ford's answer is that six months passed between the administrative appeal and the prison system's final action (that of its Director, implementing the Administrative Review Board's decision). A regulation provides that decision will be rendered within 60 days of the appeal "whenever possible". That means, Ford contends, that once 60 days have expired without a decision, the administrative process is no longer "available" and the prisoner may start the litigation. That's a non-sequitur. An aspiration to act quickly "whenever possible" does not mean that the prison system tosses out the papers and closes the files after two months; what happened to Ford's appeal demonstrates that the process continues. Some appeals are simple and will be wrapped up within two months; others are more complex. This was one of the more complex ones,

which is why the Administrative Review Board wanted to take Ford's live testimony. Section 1997e(a) applies to all grievances, not just to the simple ones. Illinois made a process available to Ford; he had to stick with that process until its conclusion rather than make a beeline for court just because the administrative officials gave his appeal the time needed to resolve it. Even six months is prompt compared with the time often required to exhaust appellate remedies from a conviction.

One final matter and we are done. Ford filed two grievances. The one we have been discussing dealt principally with the question whether (as Ford asserts) a guard attacked him without provocation or instead (as a disciplinary board found) Ford attacked the guard and had to be subdued. Ford's second grievance concerned the medical care that he received (or didn't receive) for his injuries. No matter who was the aggressor, a prison must treat an inmate's serious medical needs. Officials at Ford's prison took the medical-care grievance as duplicative of the excessive-force grievance and dismissed it; Ford did not appeal within the administrative hierarchy. The district court dismissed Ford's §1983 suit without prejudice, to the extent it concerned medical care, so that he could exhaust whatever remedies remain under state practice and try again. (If it is too late to pursue administrative remedies, then exhaustion will prove impossible and §1997e(a) will permanently block litigation. See *Pozo, supra*.) Ford now contends that the prison was right—that his second grievance *did* duplicate the first, which Ford says protested the medical care he received as well as the use of force against him.

This means, Ford submits, that the two sets of allegations stand together. Or they can fall together. As we have held that Ford filed suit too soon on the initial grievance, treating the first grievance as comprising both theories does not assist him. But his argument does call into question the distinction in the district court's judgment— excessive-force

claims dismissed with prejudice, medical-care claims dismissed without prejudice.

Why should §1997e(a) *ever* lead to dismissal with prejudice? States may allow cure of failure to exhaust; or a state may allow litigation in state court without the exhaustion rule that §1997e(a) adopts for federal litigation. In either case, dismissal with prejudice blocks what may be an appropriate suit. Moreover, if the prisoner does exhaust, but files suit early, then dismissal of the premature action may be followed by a new suit that unquestionably post-dates the administrative decision. If Ford were to file such a suit in federal court the statute of limitations might provide a good defense, but that question should be worked out directly and not be preempted by a dismissal with prejudice. We therefore hold that *all* dismissals under §1997e(a) should be without prejudice. See *Walker*, *supra*, 288 F.3d at 1009; accord, *Morales v. Mackalm*, 278 F.3d 126, 128, 131 (2d Cir. 2002); *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003); *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212-13 (10th Cir. 2003). Even a dismissal without prejudice is "final," and hence appealable, when the statute of limitations is bound to block a fresh suit, see *Larkin v. Galloway*, 266 F.3d 718, 721 (7th Cir. 2001), so this approach should provide some opportunities to prisoners without costing them their crack at appellate review.

The decision dismissing the medical-care claim without prejudice is affirmed. The decision dismissing the excessive-force claim is modified so that dismissal is without prejudice; and, as so modified, it too is affirmed.

**A true Copy:**

  **Teste:**

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*