NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 21, 2007[1]
Decided February 26, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-3052

| | |
|---|---|
| ROY AUSTIN SMITH,<br>   *Plaintiff-Appellant,*<br><br>  v.<br><br>CECIL DAVIS, et al.,<br>   *Defendants-Appellees.* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.<br><br>No. 3:05 CV 0047<br><br>James T. Moody, *Judge.* |

**O R D E R**

  Roy Smith appeals the dismissal of his action against prison officials at Indiana State Prison, where he is incarcerated. His complaint under 42 U.S.C. § 1983 includes 25 numbered counts, which can be grouped into nine claims. The district court dismissed seven at initial screening for failure to state a claim, *see* 28 U.S.C. § 1915A, and the others at summary judgment on the ground that Smith did not exhaust his administrative remedies, *see* 42 U.S.C. § 1997e(a). At this stage we

---

  [1] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

accept Smith's allegations as true. *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 559 (7th Cir. 2006).

Smith's first two claims concern his confinement in the Special Management Unit (SMU), where he was taken in March 2003 and held for 9 days without a hearing while administrators investigated his role in the stabbing of another inmate. Smith's poorly ventilated, seven- by five-foot cell was equipped with a toilet, a sink, and a bed he says he could not use because it was partly covered by an air shaft that juts into the room. The lighting and water were controlled by guards. Smith received two sacks of food each day, and he was denied hygiene products, recreation, and privacy.

The third, fourth, fifth, and sixth claims concern Smith's transfers to, and the conditions of confinement in, disciplinary and administrative segregation. In April 2003 a conduct adjustment board found Smith guilty of attempted murder in connection with the stabbing,[2] reduced his credit-earning classification, and ordered him to serve a year in disciplinary segregation. Smith spent 10 months in that unit before he was moved to administrative segregation, where he still remained when he filed this suit in February 2005. In both units Smith says his cells lacked adequate lighting and ventilation, his food was served on dirty trays, and he was not allowed outdoor recreation. He also says he was subjected to an "unreasonable threat of injury or death" because he had to rely on guards to release him from his cell in the event of fire.

Smith's seventh claim concerns his access to the courts during each of these periods of confinement. In the SMU he was denied all access to the "law library, persons trained in law, government officials, grievance proceedings, personal legal papers, and legal research materials." In disciplinary and administrative segregation his access to legal materials was "inadequate" or not "meaningful."

Smith's eighth claim is that he was placed in the SMU to coerce him to falsely confess to the stabbing, which he did. His final claim is that guards wrongfully confiscated a $50 money order and a magazine with an article about escape.

---

[2] In addition to prison disciplinary proceedings, the stabbing led to a charge of attempted murder in the LaPorte (Indiana) Superior Court. Smith was convicted on the charge, and his conviction was upheld on appeal to the Indiana Court of Appeals.

        In screening the complaint the district court dismissed the first two claims on the premise that Smith was not entitled to a hearing before being transferred into the SMU and that he was held in the SMU for too little time to trigger an Eighth Amendment issue about the conditions of his confinement. The court, citing *Lewis v. Casey*, 518 U.S. 343 (1996), also concluded that Smith did not state a claim for the denial of access to the courts because he did not identify any specific litigation affected by his confinement in the SMU or in segregation. In addition, the court held that Smith's claim about his confession was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). And, relying on *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1983), the court concluded that Smith failed to state a constitutional claim arising from his confiscated property because Indiana provides an adequate post-deprivation remedy.

        The district court also dismissed Smith's claims concerning his transfers into disciplinary and administrative segregation but allowed him to proceed with his claims concerning the conditions in those units. The court later granted summary judgment against Smith, however, on the basis that he failed to exhaust his administrative remedies. The court reasoned that Smith had submitted multiple grievances concerning the conditions in the two units but did not follow through with administrative appeals after his grievances were denied. In rejecting Smith's argument that prison officials prevented him from exhausting by not answering his grievances within the allotted 10 working days, *see* Ind. Dep't of Corr., Operational Procedures for Policy 00-02-301, *The Offender Grievance Process*, § XVIII(A), the court reasoned that Smith still was required to seek further review once his grievances were denied, even if those denials were late in arriving.

        We start with the claims dismissed at summary judgment. An inmate must exhaust all available administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S. Ct. 2378, 2382-83 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). Inmates must follow a state's rules about the content of grievances, *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002), and take all steps prescribed by the prison's grievance system, *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo*, 286 F.3d at 1025. Prison officials may not "exploit the exhaustion requirement through indefinite delay in responding to grievances," *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002), but a reasonable delay does not render the remedy unavailable, *Ford*, 362 F.3d at 400; *cf. Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998) (holding that available administrative remedies are exhausted when time limit for administrators to respond to grievance has expired).

Smith introduced 27 grievances at summary judgment that, he says, were submitted to prison officials concerning the conditions in the disciplinary and administrative segregation units. But only 11 of those grievances concern the conditions at issue in Smith's § 1983 action after initial screening, and two of those were returned to Smith without action because they do not comply with the prison's grievance policy about the content of grievances. *See* Ind. Dep't of Corr., Operational Procedures for Policy 00-02-301, *The Offender Grievance Process*, § XIV ("Complaints citing multiple, unrelated incidents/issues are not acceptable."). Prison officials responded to the other nine grievances, always after the 10-day deadline but usually within about 30 days. Smith argues that he exhausted his available remedies because of the late responses and because, he insists, prison officials refused to let him proceed to the next step in the grievance process. Smith might have a point if, in fact, administrators would not allow him to proceed to the next step in the grievance process without waiting for untimely responses to his grievances; the procedures are explicit that the "[f]ailure of staff to respond in accordance with the established time limit at any stage of the process shall entitle the offender to move to the next stage of the process" unless the superintendent has given written authorization for an extension. *See id.* § XVIII. Smith, though, submitted no evidence that he tried to proceed past the first step on any of the nine relevant grievances. Instead, the evidence he submitted establishes that he tried to move to step two on only the two grievances that were rejected for noncompliance with grievance policy. Prison officials refused to let him proceed for the same reason they rejected those grievances initially: the grievances contained multiple, unrelated issues. Thus, we cannot say that the district court erred in determining, based on the undisputed evidence, that administrative remedies were available to Smith that he failed to properly exhaust.

We also find no error with the district court's dismissal, under § 1915A, of Smith's remaining claims. Accordingly, the judgment is AFFIRMED.