NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 4, 2018[*]
Decided April 5, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 17-2888

| | |
|---|---|
| JAMES L. WEBB,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:16-cv-00352-WTL-MJD |
| MARK BENDER, *et al.*,<br>    *Defendants-Appellees.* | William T. Lawrence,<br>*Judge.* |

**O R D E R**

James Webb contends that doctors and nurses at Wabash Valley Correctional Facility inadequately treated his injured hand in violation of the Eighth Amendment. The district court entered summary judgment for defendants because Webb had not filed a timely grievance with the prison and thus had not exhausted his remedies, as

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Because the undisputed evidence shows that Webb filed his grievance too late to exhaust, we affirm.

Webb alleges that on October 3, 2014, Nurse Mark Bender placed Webb's injured hand into a cast. Another nurse replaced Webb's cast approximately two weeks later. Both times the nurses applied the casts without first using an x-ray or asking a doctor to examine the hand. The second nurse told Webb that he would have a follow-up appointment six weeks later, but Webb maintains the appointment never occurred. He says, however, that his hand was x-rayed about one week after his cast was replaced, and at that time Dr. Neil Martin acknowledged that his hand was broken. Webb contends that the failure to x-ray his hand before it was placed in a cast permanently damaged it.

To exhaust administrative remedies, an Indiana prisoner must (1) attempt informal resolution, (2) file a formal grievance, and (3) take an administrative appeal. The Department of Correction recognizes only one exhaustion process, though it modified the process between when Webb's injury occurred and when he filed his grievance. Since April 2015, prisoners must complete a form to document that they attempted informal resolution. But under either version of the procedure, a prisoner must file a formal grievance no later than 20 business days after the date of the incident giving rise to the grievance.

Webb filed a grievance regarding the treatment of his hand, but the prison considered it untimely. He filed his informal grievance form on August 14, 2015, over ten months after his hand was broken and placed into its first cast. He filed a formal grievance on August 27 and attempted to excuse his tardiness by asserting that he had sought to file a grievance on July 21, 2015, but was somehow prevented from doing so. A grievance specialist "allowed" this formal grievance but denied it as it was filed too late. She wrote that even if Webb had filed a grievance on July 21, it would have been untimely regardless whether the new or old procedure applied. Her "finding" thus was that Webb "failed to comply with the grievance procedure." The specialist also observed that Webb admitted in the grievance that his hand had been treated, so she did not recommend relief on the merits for that reason either. Webb's administrative appeal was denied solely because the grievance was untimely.

Webb then turned to district court with this suit under 42 U.S.C. § 1983. After screening he filed, but apparently did not serve on defendants, a request that the

prison's superintendent (who is not a party) produce correspondence between him, the superintendent, and a prison commissioner. These letters, which Webb alleges led the superintendent to approve his request to file a late grievance, were never produced. Webb does not say whether the correspondence occurred within the 20 days that he had to file his grievance. The defendants later moved for summary judgment, arguing that Webb had failed to exhaust his remedies. The district court granted the motion. It reasoned that Webb's grievance was untimely under the 20-day rule, and it rejected as irrelevant Webb's argument about the unproduced correspondence.

On appeal Webb contends that he exhausted his administrative remedies because he was uncertain about when the time to file his grievance started. But even viewing the timeline of events favorably to Webb, we conclude that his grievance was still significantly untimely. We recognize that he never received a promised follow-up appointment six weeks after his cast's replacement, *i.e.*, eight weeks after the initial cast. But eight weeks after October 3 (the date of the initial cast) is November 28, 2014. If prison rules allowed him 20 business days after that date to file his grievance, his period to file extended to, at most, December 30. The earliest Webb says that he attempted to file a grievance was July 21, 2015, which is still over six months too late. And Webb has not offered any explanation for this gap. His grievance was thus properly denied as untimely, and therefore he has not exhausted his administrative remedies. See *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Webb also argues that the defendants cannot rely on the defense that his grievance was untimely because the grievance specialist noted that the grievance was "allowed" and rejected its merits. This argument has two flaws. First, his administrative appeal was denied *solely* because the grievance was untimely. We must respect the prison's proper invocation of its procedural rules, including the time limits for filing a grievance. See *id.* Second, even if we focus just on the specialist's response, Webb must lose. A prisoner has exhausted his remedies if officials ignore a procedural fault in a grievance and address its merits "without rejecting it on procedural grounds." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); see *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (noting we will find a plaintiff has exhausted remedies when "the tribunal decides the merits *without treating the procedural default as an independent ground of decision*" (emphasis added)). That rule does not apply here because the specialist cited the finding of untimeliness as her reason for denying the grievance.

Finally Webb argues that had the district court ordered the production of his letters seeking leave to file his grievance late—leave that he says was granted—he could have shown that he exhausted his remedies. This argument also has two flaws. First, the district judge did not order production of those letters because Webb never properly sought their production. He needed to serve his requests on defendants, not just file them with the court, see FED. R. CIV. P. 26(d)(2), 34(a), 45(a)(4); S.D. IND. L.R. 26-2; he needed to serve a subpoena because he sought the documents from a non-party, see FED. R. CIV. P. 34(a), (c), 45; and once he served a subpoena on the defendants, and did not receive the documents, he needed to file a motion with the court to compel their production, see FED. R. CIV. P. 37(a). Webb did none of this.

But even if we overlooked these problems, we would affirm the judgment because the letters are not relevant to Webb's failure to exhaust. Webb does not contend that he received favorable responses to his letters before the 20-day deadline to file his grievance had elapsed and that he relied on the responses to ignore the deadline. *Cf. Swisher v. Porter Cnty. Sheriff's Dep't*, 769 F.3d 553, 555 (7th Cir. 2014) (concluding inmates are excused from complying with exhaustion procedures if prison officials invite the noncompliance). Without Webb's arguing that he received the letter before the 20 days had elapsed, the correspondence could not excuse his untimely grievance. See *id.* He was required to comply with the procedures given by the prison; alternative methods of resolution are not a substitute for exhaustion. See *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005).

AFFIRMED