In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3503

JONATHAN CHAMBERS,

*Plaintiff-Appellant*,

*v.*

KUL B. SOOD,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 2545 — **John J. Tharp, Jr.**, *Judge*.

ARGUED SEPTEMBER 25, 2019 — DECIDED APRIL 28, 2020

Before FLAUM, SYKES, and SCUDDER, *Circuit Judges*.

SYKES, *Circuit Judge*. Jonathan Chambers, an Illinois prisoner, sued a prison doctor under 42 U.S.C. § 1983 accusing him of deliberate indifference to his medical needs—specifically, his need for medication to treat a flare-up of a painful chronic condition. The doctor had examined him during the intake process at the Stateville Correctional Center, which serves as the reception unit for new Illinois prisoners. Chambers was housed there for a few weeks

when he was processed into state custody, and he filed a grievance with the Stateville grievance office protesting the doctor's failure to prescribe medication.

But Chambers was transferred to a different prison before the grievance was investigated, so a grievance officer returned it to him unreviewed and invited him to take the matter to the Administrative Review Board ("ARB" or "the Board"). The ARB normally serves in an appellate capacity reviewing decisions of grievance officers, but the operative regulations also specified that grievances pertaining to problems at an earlier-assigned prison must be filed directly with the Board. Chambers skipped this step and instead brought this lawsuit in district court.

The judge dismissed the suit for failure to exhaust administrative remedies, and we affirm. Under the Prison Litigation Reform Act ("PLRA" or "the Act"), prisoners must pursue their complaints about prison conditions through all levels of the relevant administrative-review system before bringing a lawsuit in federal court. Chambers did not do so. Though he eventually submitted a grievance to the ARB *after* he filed suit, that step did not satisfy the PLRA. The Act requires *pre-suit* exhaustion; pursuing administrative remedies while litigation is underway does not suffice.

## I. Background

On February 27, 2014, Chambers was processed into the custody of the Illinois Department of Corrections at the Stateville Northern Reception and Classification Center, located in the Stateville prison. During his intake medical examination, Chambers told the nurse that he was suffering from a herpes outbreak and needed medication. The nurse

told him that a doctor would see him in the next two or three days. On March 1 Chambers was examined by Dr. Kul B. Sood, who reviewed his medical history—including his history of herpes outbreaks—and instructed him to put in a "sick call" request for a follow-up appointment. Chambers did so but received no response. In the meantime he continued to suffer pain from his herpes flare-up.

On March 9 Chambers submitted a grievance to his inmate counselor at Stateville protesting the doctor's failure to give him medication for his herpes. He sought $60,000 for pain and suffering and asked to be "seen by a Doctor as of today." The counselor responded to Chambers in writing on March 13, advising him that she had forwarded the grievance to the healthcare unit and to the Stateville grievance office and that he would receive a decision from that office after the healthcare unit responded to the inquiry.

Under the Illinois Administrative Code, a grievance officer must investigate a grievance and report findings and a recommendation in writing to the Chief Administrative Officer within two months "when reasonably feasible under the circumstances." ILL. ADMIN. CODE tit. 20, § 504.830(e) (2014). The Chief Administrative Officer then reviews the findings and recommendation and notifies the offender of his decision in writing. *Id.* That process did not run its course while Chambers remained at Stateville. On March 21, just eight days after his counselor forwarded the grievance to the Stateville grievance office, Chambers was transferred to the Western Correctional Center.

Accordingly, on April 3 a grievance officer returned the grievance with a memo explaining that it was not reviewed prior to his transfer. The memo advised Chambers that "[i]f

you want to appeal, you may forward this grievance along with this memo attached to the ARB."

Chambers did not submit the issue to the ARB. Instead, on April 7 he filed a pro se complaint in district court asserting a § 1983 claim and seeking damages for the failure to provide medication for his herpes outbreak while he was at Stateville. The complaint named multiple defendants: "Stateville Medical Staff/Healthcare Services, Nurse Tiffany, Nurse Megan, Unknown Physician #1," four unknown nurses, and the Stateville counselor. A week later a district judge screened and dismissed the complaint, noting that Chambers had not exhausted his administrative remedies as required by the PLRA. Although the dismissal was without prejudice, the judge terminated the case, explaining that Chambers "must file a new suit that postdates the full administrative exhaustion procedure."

On June 2 Chambers filed a grievance with the ARB regarding his medical care for the herpes outbreak he suffered while at Stateville. He attached a copy of his March 9 grievance and asked that the culpable Stateville medical staff be suspended without pay. The regulations provide that the ARB must issue a final decision within six months "when reasonably feasible under the circumstances." *Id.* § 504.850(e). On November 10 the ARB issued its decision, explaining that Chambers's complaint about an urgent need for medication for his herpes flare-up while he was at Stateville "cannot be substantiated as medically necessary."

Meanwhile, on September 22 Chambers filed a proposed amended complaint in the terminated district-court case naming an "Unknown Doctor" and "Stateville Medical Staff" as defendants. On October 23 the judge provisionally

determined that the amended complaint adequately pleaded that Chambers had been prevented from exhausting administrative remedies. But the amended complaint did not identify a suable defendant, so the judge gave Chambers 30 days to cure the defect. Chambers moved for an extension of time on November 3 and submitted with the motion a proposed amended complaint devoid of any substantive claim. Four days later the judge struck the proposed amended complaint and set a firm December 1 deadline for Chambers to file a nondeficient pleading.

Chambers did not comply with the December 1 deadline, so the judge dismissed the suit and (again) terminated the case. That prompted a flurry of letters and motions from Chambers in January and February 2015 trying to revive the case. On March 25 the judge issued an order giving him one more chance to file an adequate amended complaint. Chambers filed a proposed amended complaint on April 3 asserting a claim for deliberate indifference against an unknown doctor for failure to prescribe medication for the herpes outbreak he suffered while at Stateville. He asked the court's permission to name the warden as a stand-in defendant until the identity of the unknown doctor could be discovered. The judge authorized this procedure and accepted the amended complaint.

The case moved forward, and the judge eventually recruited pro bono counsel to assist Chambers. Discovery revealed that the unknown Stateville physician was Dr. Sood. On February 8, 2016, pro bono counsel sought leave to dismiss the warden and file a proposed amended complaint naming Dr. Sood, together with the Stateville Correctional Center and the Illinois Department of Correc-

tions, as defendants. The judge granted the motion the next day, though the latter two defendants were eventually dismissed by agreement of the parties.

Dr. Sood moved to dismiss for failure to exhaust administrative remedies. The judge granted the motion, explaining that Chambers did not complete the grievance process before bringing suit in federal court, as required by the PLRA. Although the dismissal was without prejudice, the judge terminated the case, explaining that "this lawsuit was filed prematurely." The judge also permitted pro bono counsel to withdraw.

Chambers filed a pro se notice of appeal and sought permission to proceed in forma pauperis. The judge denied that request, finding that an appellate challenge to the exhaustion ruling would be frivolous and thus not brought in good faith. *See* 28 U.S.C. § 1915(a)(3). Chambers renewed his application in this court. We authorized him to proceed in forma pauperis and recruited pro bono counsel to assist him on appeal.[1]

## II. Discussion

We review de novo a decision dismissing a prisoner's suit for failure to exhaust administrative remedies. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

---

[1] David R. Fox and Benjamin C. Mizer of Jones Day accepted the representation and have ably discharged their duties. We thank them for their service to their client and the court.

other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances. *See Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). The primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed. *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006); *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020).

Chambers contends that his March 9, 2014 grievance sufficed for exhaustion purposes. He argues that nothing more was required of him after the Stateville grievance officer returned the grievance unreviewed.

This argument misreads the grievance procedures outlined in the Illinois Administrative Code. To recap: an inmate begins the process by submitting a written grievance to his institutional counselor within 60 days of the incident or problem in question. ILL. ADMIN. CODE tit. 20, § 504.810(a) (2014). The counselor then refers the matter to the institution's grievance office, and a grievance officer "shall consider the grievance" and report his findings and recommendation "in writing to the Chief Administrative Officer within two months after receipt of the written grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). The Chief Administrative Officer then "review[s] the findings and recommendation and advise[s] the offender of his or her decision in writing." *Id.* Dissatisfied inmates may appeal to the ARB "within 30 days after the date of the decision." *Id.* § 504.850(a).

These are the generally applicable rules. Some grievances, however, must be submitted directly to the ARB. This category generally includes grievances regarding matters arising at an earlier-assigned prison. At the time of these events, the regulations required inmates to file their grievances directly with the ARB when grieving "issues except personal property issues that pertain to a facility other than the facility where the offender is currently assigned." *Id.* § 504.870(a)(4).[2]

Chambers's March 9 grievance sufficed to initiate the grievance process at Stateville. But the process could not be completed there. Chambers was transferred to the Western Correctional Facility just eight days after his counselor forwarded his grievance to the Stateville grievance office and before that office could complete an investigation, much less propose and implement any remedy. So the grievance officer returned the grievance with a memo advising Chambers that it had not been reviewed prior to his transfer and if he wanted to appeal, he should forward the grievance to the ARB with a copy of the memo.

Chambers insists that this action by the grievance officer was procedurally improper, relieving him of the duty to comply with any further steps in the grievance process. We disagree. It's true that the regulations ordinarily call for the grievance officer to consider a grievance and forward findings and a recommendation to the Chief Administrative

---

[2] This provision was amended in 2017. It now requires inmates to file grievances directly with the ARB when grieving "issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." ILL. ADMIN. CODE tit. 20, § 504.870(a)(4) (2017).

Officer, who issues a decision to the inmate, which the inmate may then appeal. But the usual process was interrupted when Chambers was transferred to another prison. At that point his problem could no longer be remedied at Stateville. With Chambers now at another prison, the grievance officer could do no more than refer him to the ARB for relief. Whether by "appeal" or through a fresh grievance raising a problem that occurred at an earlier-assigned facility, Chambers needed to submit the matter to the ARB.

We grant that the grievance officer's use of the word "appeal" was unusual, but the important point is that the regulations required Chambers to take his complaint about his medical care at Stateville to the ARB for decision. He did not do so. Instead, he went to court. That's a violation of the PLRA's exhaustion requirement.

Chambers has a fallback argument, raised for the first time on appeal. He argues that because he eventually filed a grievance with the ARB and later amended his complaint, his suit is saved. Setting aside the question of waiver, this argument is meritless. By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a "sue first, exhaust later" approach is not acceptable. *See Ford v. Johnson*, 362 F.3d 395, 398–400 (7th Cir. 2004). A premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit after fully exhausting administrative remedies. *Id.* at 401.

Our decisions in *Cannon v. Washington* and *Barnes v. Briley* are not to the contrary. Those cases addressed amended complaints raising new claims that the plaintiff had exhausted while litigation was ongoing. *Cannon v. Washington*, 418 F.3d 714, 717–19 (7th Cir. 2005) (per curiam); *Barnes*,

420 F.3d at 678. Chambers's claim against Dr. Sood is not new; it's the same claim he raised in his original pro se complaint, albeit against "Unknown Doctor #1." The judge was right to dismiss this suit.

AFFIRMED