UNITED STATES DISTRICT COURT 
 SOUTHERN DISTRICT OF INDIANA 
 INDIANAPOLIS DIVISION 

BILLY STACY, ) 
 ) 
 Plaintiff, ) 
 ) 
 v. ) No. 1:21-cv-00644-SEB-TAB 
 ) 
WEXFORD OF INDIANA, LLC, ) 
DUANE PIERCE, ) 
ARAMARK CORPORATION, ) 
JACKSON, ) 
MASON, ) 
 ) 
 Defendants. ) 

 ORDER GRANTING STATE DEFENDANTS' 
 UNOPPOSED MOTION FOR SUMMARY JUDGMENT 

Plaintiff Billy Stacy, an Indiana Department of Correction (IDOC) inmate, filed this civil 
rights action pursuant to 42 U.S.C. § 1983 based upon allegations that Lt. Jackson and Cpt. Mason 
(the state defendants) violated his Eighth Amendment rights after he was assaulted by another 
inmate and suffered injury to his jaw. Dkt. 13. The state defendants now seek summary judgment 
on the basis that Mr. Stacy failed to first exhaust his administrative remedies before bringing this 
lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). 
For the reasons discussed below, the Court GRANTS the state defendant's unopposed 
motion for summary judgment, dkt. [57], such that the Eighth Amendment claims against them 
are DISMISSED without prejudice. 1 

1 Defendants Wexford of Indiana, LLC, and Dr. Duane Pierce provided notice to the Court on March 15, 
2022, of their withdrawal of the exhaustion defense. See dkt. 44. The claims against Wexford of Indiana, 
LLC, and Dr. Duane Pierce shall proceed to the merits of the claims alleged against them. 

Defendant Aramark Corporation filed its motion for summary judgment on exhaustion, dkt. 60, which the 
Court will rule upon via separate order. 
 I. Background 
Mr. Stacy's allegations relate to his incarceration at Pendleton Correctional Facility 
(Pendleton) where he was assaulted by another inmate on January 1, 2020, and he suffered a broken 
jaw and required a surgery that wired his jaw shut. Dkt. 13. Mr. Stacy alleges that Cpt. Mason and 

Lt. Jackson denied his requests for medical treatment and appropriate food given his broken jaw. 
Id. When Mr. Stacy tried to seek help by throwing trash outside of his cuff port and covering up 
the camera in his cell on January 29, 2020, Lt. Jackson sprayed him with OC spray arbitrarily and 
without warning. Id. 
An Eighth Amendment deliberate indifference claim based on the denial of food and 
medical treatment is proceeding against Cpt. Mason and Lt. Jackson Id. at 6. An excessive force 
claim is also proceeding against Lt. Jackson. Id. The state defendants argue that these claims must 
be dismissed because Mr. Stacy did not exhaust his administrative remedies prior to filing this 
lawsuit. Specifically, that Mr. Stacy never initiated a second appeal with respect to his formal 
grievance regarding his deliberate indifference claims and that he failed to timely file a formal 

grievance with respect to his excessive force claim. Dkt. 57. 
 II. Legal Standard 
Summary judgment should be granted "if the movant shows that there is no genuine dispute 
as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 
P. 56(a). A "material fact" is one that "might affect the outcome of the suit." Anderson v. Liberty 
Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find 
for the non-moving party. Id. If no reasonable jury could find for the non-moving party, then there 
is no "genuine" dispute. Scott v. Harris, 550 U.S. 372, 380 (2007). The Court views the facts in 
the light most favorable to the non-moving party, and all reasonable inferences are drawn in the 
non-movant's favor. Ault v. Speicher, 634 F.3d 942, 945 (7th Cir. 2011). 
Mr. Stacy failed to timely respond to the summary judgment motion, and his motion for a 
second extension of time, filed nearly seven months after the final deadline, was denied.2 See dkt. 

72. Accordingly, the facts in the motion for summary judgment are deemed admitted so long as 
support for them exists in the record. See S.D. Ind. L.R. 56-1 ("A party opposing a summary 
judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies 
on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and 
factual disputes that the party contends demonstrate a dispute of fact precluding summary 
judgment."); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the 
nonmovant as mandated by the local rules results in an admission"); Brasic v. Heinemanns, Inc., 
121 F.3d 281, 285-86 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant 
failed to properly offer evidence disputing the movant's version of the facts). This does not alter 
the summary judgment standard, but it "[r]educe[s] the pool" from which facts and inferences 

relative to the motion may be drawn. Smith v. Severn, 129 F.3d 419, 426 (7th Cir. 1997). Thus, 
"[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still 
ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" Robinson v. 
Waterman, 1 F.4th 480, 483 (7th Cir. 2021) (quoting Yancick v. Hanna Steel Corp., 653 F.3d 532, 
543 (7th Cir. 2011)). 

2 The Court found that "Mr. Stacy has not shown good cause or diligence of his obligation to litigate this 
action by waiting nearly seven months from the Court's initial extension of his deadline to file his response 
to communicate with the Court . . . . Though Mr. Stacy contends it was difficult for him, due to his transfers, 
to enroll in the Prisoner E-filing program, he has not explained why he could not communicate with the 
Court using the United States Postal Mail in the interim." Dkt. 72 at 3 (Mar. 2, 2023, Order Denying 
Plaintiff's Second Motion for Extension of Time). 
 II. Facts 
The following statement of facts was evaluated pursuant to the standard set forth above. 
That is, this statement of facts is not necessarily objectively true, but as the summary judgment 
standard requires, the undisputed facts and the disputed evidence are presented in the light most 

favorable to the non-moving party. See Reaves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 
150 (2000). 
A. Offender Grievance Process 
At all times relevant to his complaint, Mr. Stacy was incarcerated at Pendleton, an IDOC 
facility. Dkt. 2. "As required under IDOC policy, an offender grievance program is in place" at 
Pendleton. Dkt. 58-1, ¶ 5 (Conyers Aff.). IDOC Policy and Administrative Procedure 00-02-301, 
Offender Grievance Process (Grievance Process), effective October 1, 2017, sets forth the steps 
through which inmates committed to the IDOC "may resolve concerns and complaints relating to 
their conditions of confinement." Dkt. 58-2 at 1. This policy is the only grievance process 
recognized by the IDOC. Dkt. 58-1, ¶ 8. 

Inmates must take the following three steps to complete the Grievance Process, after first 
attempting to resolve the issue informally. Dkt. 58-2 at 3, 8-13. First, the inmate shall submit a 
completed State Form 45471 to file a formal "offender grievance" within 10 business days of the 
incident. Id. at 9. Second, if the formal grievance is not resolved to the inmate's satisfaction, the 
inmate may file a completed State Form 45473 Level 1 "grievance appeal" and submit it to the 
Offender Grievance Specialist within 5 business days after the date of the grievance response (or 
if the inmate does not receive a response to the grievance within the applicable timeframe, it may 
be appealed as if it had been denied). Id. at 11. The Level 1 grievance appeal is decided by the 
Warden or his designee. Id. at 12. 
To complete the third and final step of the formal grievance process, the inmate must appeal 
the Warden/designee's decision to the Department Offender Grievance Manager. Id. at 12-13. This 
requires the inmate to, "check the 'Disagree' box, sign, and submit the completed State Form 45473 
'Offender Grievance Appeal,' and any additional, pertinent documentation to the Offender 

Grievance Specialist" within 5 business days of the Warden/designee's appeal response. Id. This 
is a Level 2 "grievance appeal." Id. The Offender Grievance Specialist "shall scan and enter the 
completed State Form 45473 and any additional pertinent documents" into the grievance database. 
Id. 
"The successful exhaustion of the grievance process requires an offender to timely 
complete each step or level of the Offender Grievance Process. An offender is required to use the 
proper grievance forms in order to exhaust successfully, and must timely file[] each grievance 
within the timeframe outlined in the Offender Grievance Process." Dkt. 58-1, ¶ 12. 
Inmates are informed of the Grievance Process during Offender Admission and 
Orientation. Id., ¶ 32. Staff ensure that inmates are notified of the Grievance Process and are aware 

of how to obtain copies of the process. Dkt. 58-2 at 7. Inmates receive access to copies of the 
process in the Department's Offender Handbook, which includes a section on the Grievance 
Process. Id. Copies of the Grievance Process are also available in the law library, through requests 
to counselors, and from the Grievance Specialist. Dkt. 58-1, ¶ 33. "The offender grievance process 
is available to offenders at all times, including when they are in restrictive housing or segregation." 
Id., ¶ 31. 
B. Mr. Stacy's Use of the Grievance Process 
IDOC retains records of every formal grievance and appeal submitted by an inmate. Id., ¶¶ 
19, 35. The record contains Mr. Stacy's grievance history and related grievances, which indicate 
that Mr. Stacy failed to complete the Grievance Process related to his Eighth Amendment claims 
against the state defendants. Dkt. 58-3; dkt. 58-4. 
 1. Eighth Amendment Deliberate Indifference Claims 
Mr. Stacy filed a formal grievance related to his Eighth Amendment deliberate indifference 

claims against the state defendants that was received on January 14, 2020, and it was logged as 
grievance #110952. Dkt. 58-1, ¶¶ 38-39; dkt. 58-3 at 2; dkt. 58-4 at 1-14. The grievance 
complained about the delay in treatment between when he was injured on January 1, 2020, and 
when he received treatment on or about January 10, 2020. Dkt. 58-4 at 2. The Grievance Specialist 
responded on January 22, 2020, that Mr. Stacy had been seen and evaluated, he returned to the 
facility with his jaw repaired, and he was currently on a full liquid diet. Id. at 1-2. 
Mr. Stacy disagreed with the response and filed a first level appeal that was received on 
January 27, 2020. Id. at 3-8. Mr. Stacy explained that the medical care provided continues to be 
inadequate and that his liquid diet has been discontinued. Id. at 3. The warden/designee issued a 
response to the first level appeal on February 12, 2020, which deemed Mr. Stacy's medical care 

appropriate. Id. at 3. 
The IDOC's grievance history records reflect that Mr. Stacy did not file his second level 
appeal, meaning that he never returned the first level appeal with the "Disagree" box checked, 
"which would have indicated that he wished to appeal to the Department Grievance Manager." 
Dkt. 58-1, ¶ 39. The Grievance Specialist marked that the second level appeal had not been 
received by the deadline of February 24, 2020. Id.; dkt. 58-4 at 9 (stating "confidential out of time 
2-24-2000"). 
 2. Eighth Amendment Excessive Force Claim 
Mr. Stacy submitted a grievance related to the excessive force incident with Lt. Jackson on 
January 29, 2020. Dkt. 58-1, ¶ 40. The Grievance Specialist received the formal grievance two 
days later and returned it to Mr. Stacy that same day. Id. The grievance was returned because Mr. 
Stacy "had submitted the grievance too early . . . without allowing staff five business days to 
respond to his informal grievance." Id.; dkt. 58-5 at 1-3 ("You have submitted the form too early. 

The situation you describe does not exist yet, or you have not allowed enough time for an informal 
resolution. If you cannot show good cause for submitting it now, you must wait until the correct 
time has come."). The return instructed Mr. Stacy to "allow staff 5 business/working days to 
respond." Dkt. 58-5 at 1. 
The Grievance Specialist attested that if a formal grievance "is rejected, it is returned to the 
offender along with an explanation as to why the form was returned," the return highlights the 
reasons for the denial, and "[i]t is then the offender's responsibility to make the necessary revisions 
to the grievance form and to return it" to the Grievance Specialist within five business days. Id., ¶ 
18. Mr. Stacy did not resubmit the grievance. Id., ¶ 41. 
Rather, Mr. Stacy filed another formal grievance regarding the incident with Lt. Jackson 

nearly seven months later, that was received on August 26, 2020. Id., ¶ 42. This grievance was 
returned as untimely because it was submitted outside of the ten-business day from the date of 
incident window. Id., ¶ 43. "An offender who does not follow the established time limits" in the 
Grievance Process "may have [his] grievance or appeal denied for failure to comply with the time 
frame," however, the Grievance Specialist has "discretion to consider an untimely grievance if 
there was good cause." Id., ¶ 28. Because this grievance was filed many months outside of the 
timeframe permitted, the Grievance Specialist attested it "would not have been allowed to be re-
submitted[.]" Id., ¶ 43. 
 III. Discussion 
On a motion for summary judgment, "[t]he applicable substantive law will dictate which 
facts are material." Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc., 98 F.3d 262, 265 (7th 
Cir. 1996) (citing Anderson, 477 U.S. at 248). The substantive law applicable to this motion for 

summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner 
exhaust his available administrative remedies before bringing a suit concerning prison conditions. 
42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's 
exhaustion requirement applies to all inmate suits about prison life, whether they involve general 
circumstances or particular episodes, and whether they allege excessive force or some other 
wrong." Porter, 534 U.S. at 532 (citation omitted). 
"Proper exhaustion demands compliance with an agency's deadlines and other critical 
procedural rules because no adjudicative system can function effectively without imposing some 
orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) 
(footnote omitted); see also Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to 

properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the 
time, the prison's administrative rules require.'") (quoting Pozo v. McCaughtry, 286 F.3d 1022, 
1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps 
prescribed by the prison's grievance system." Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004). 
As the movant, the state defendants bear the burden of establishing that the administrative 
remedies upon which they rely were available to Mr. Stacy. See Thomas v. Reese, 787 F.3d 845, 
847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish 
that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he 
ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' 
and that which 'is accessible or may be obtained.'" Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) 
(internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance 
procedures that are capable of use to obtain some relief for the action complained of." Id. at 1859 
(internal quotation omitted). 

A. Eighth Amendment Deliberate Indifference Claims 
The undisputed record indicates that the Grievance Process was available to Mr. Stacy. 
Indeed he completed the first two steps related to his Eighth Amendment deliberate indifference 
claims. But, fatal to exhaustion of his administrative remedies is the undisputed record 
demonstrating that Mr. Stacy did not complete the required final step of the grievance process by 
filing a second level appeal. See, e.g., Ford, 362 F.3d at 397. Thus, he has not exhausted these 
claims against the state defendants. 
B. Eighth Amendment Excessive Force Claim 
The undisputed record shows that while Mr. Stacy attempted to grieve the excessive force 
incident with Lt. Jackson, his first formal grievance was returned as too early, and the return 

provided explanation that Mr. Stacy was to first allow five business days for a response to his 
informal resolution. Dkt. 58-5 at 1 ("Please allow staff 5 business/working days to respond to your 
SF36935"). The state defendants have not pointed to any portion of the Grievance Process that 
requires a five-day waiting period, and the Court could not identify one. However, Mr. Stacy was 
required to attempt to resolve his grievance informally prior to filing his formal grievance. Dkt. 
58-2 at 3. The policy states: 
Before filing a grievance, an offender is required to attempt to resolve a complaint 
informally and provide evidence (e.g., 'To/From' correspondence, State Form 
36935, 'Request for Interview') of the attempt. The offender may do this by 
discussing the complaint with the staff member responsible for the situation or, if 
there is no such single person, with the person who is in charge of the area where 
the situation occurs. If the offender is uncomfortable discussing the issue with that 
staff member, he/she may discuss with the staff person’s immediate supervisor. 

Id. at 8-9 (emphasis added). 

The Supreme Court has made clear that a remedy is not available "when prison 
administrators thwart inmates from taking advantage of a grievance process through machination, 
misrepresentation, or intimidation." Ross, 578 U.S. at 644. The rejection of Mr. Stacy's formal 
grievance dated January 29, 2020, with instructions to resubmit in five days does not reflect an 
attempt to thwart Mr. Stacy from taking advantage of the Grievance Process. The unopposed 
summary judgment record reflects that Mr. Stacy filed his formal grievance prior to attempting to 
informally resolve his complaint about the excessive force incident with Lt. Jackson. In addition, 
while the instructions provided (resubmit in five days) was arbitrary in that a response to Mr. 
Stacy's SF36935 request could have been provided earlier, or perhaps not at all, it was reasonable 
guidance given that the formal grievance was filed too soon. 
Rather than to re-submit his grievance in short order after that time passed, Mr. Stacy 
waited for nearly seven months to raise the issue again. Mr. Stacy's August 2020 grievance 
acknowledged his untimeliness. Dkt. 58-6 ("Yes, the reason I'm late at filing this grievance you 
stated I was filing too early. I'm late now, because I was waiting on a response from Lt. Jackson I 
never received."). 
The Court finds that there is no evidence to support that Mr. Stacy was somehow thwarted 
from re-submitting his first grievance after five business days had lapsed to first allow for informal 
resolution. Indeed the Grievance Process makes clear that if an offender is unable to resolve the 
complaint informally, he can move to the first step of formal resolution. Dkt. 58-2 at 9. The return 
of Mr. Stacy's first grievance did not state he was prevented from filing a grievance at all, only 
that he needed to wait for five additional business days before doing so, to allow time for a response 
to his informal attempt. Moreover, nothing in the return, or the Grievance Process itself, indicates 
that Mr. Stacy needed to wait for an official informal resolution response from Lt. Jackson after 
those five business days expired before re-submitting his grievance. Mr. Stacy simply did not take 
further action in time to take the first step in the Grievance Process, let alone complete all three 

steps. 
"For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file 
complaints and appeals in the place, and at the time, the prison's administrative rules require." 
Burrell v. Powers, 431 F.3d 282, 285 (7th Cir. 2005) (quotation marks and citation omitted). 
Mr. Stacy did not do so as to his Eighth Amendment excessive force claim against Lt. Jackson. In 
addition, there are no "contested facts material to the question of whether the grievance process 
was available to [Mr. Stacy]," and summary judgment is therefore proper. Smallwood v. Williams, 
59 F.4th 306, 315-16 (7th Cir. 2023). 
Accordingly, the consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is 
that this action should not have been brought against the state defendants, and these federal claims 

must now be dismissed without prejudice. Ford, 362 F.3d at 401 (holding that "all dismissals under 
§ 1997e(a) should be without prejudice."). 
 IV. Conclusion 
For the reasons explained above, the state defendants' unopposed motion for summary 
judgment on exhaustion, dkt. [57], is GRANTED. All claims against the state defendants are 
DISMISSED without prejudice. In these circumstances, no partial final judgment shall issue at 
this time. 
 The clerk is directed to terminate Cpt. Mason and Lt. Jackson as defendants on the 
docket. 
 IT IS SO ORDERED. 

 Date: 3/7/2023 Poth Gaus Baler 
 SARAH EVANS BARKER, JUDGE 
 United States District Court 
 Southern District of Indiana 

Distribution: 
BILLY STACY 
104907 
INDIANA STATE PRISON 
INDIANA STATE PRISON 
Electronic Service Participant — Court Only 
Douglass R. Bitner 
Stoll Keenon Ogden PLLC 
doug. bitner@skofirm.com 
Christopher Douglas Cody 
HUME SMITH GEDDES GREEN & SIMMONS 
ccody@humesmith.com 
Thomas Pratt 
Office of Indiana Attorney General 
Thomas.Pratt@atg.in.gov 
Georgianna Q. Tutwiler 
HUME SMITH GEDDES GREEN & SIMMONS 
gquinn@humesmith.com 

 12